236 So.2d 573 (1970)
READCO INDUSTRIES, INC.
v.
MYRMAX SPECIALTIES, INC., et al.
No. 7989.
Court of Appeal of Louisiana, First Circuit.
May 25, 1970.
Rehearing Denied June 30, 1970.
Frank M. Coates, Jr., of Taylor, Porter, Brooks & Phillips, Baton Rouge, for appellant.
Jimmie R. Major, Baton Rouge, for appellees.
Before LOTTINGER, BLANCHE and PICKETT, JJ.
BLANCHE, Judge.
Suit was filed in this case by plaintiff-appellant, Readco Industries, Inc., to recover the sum of $9,321.82, allegedly owed by defendant, Myrmax Specialties, Inc., resulting from plaintiff's operations on behalf of said defendant as the latter's distributor of products sold in Louisiana and Mississippi during a specified period. Also made a defendant in the suit was Lyall Rosenfield, who was employed by plaintiff and against whom plaintiff alleged that in the event certain credits urged by Myrmax by way of compensation were allowed, plaintiff should have recovery in like amount against its former employee, who exceeded his authority. Myrmax answered the suit denying liability and reconvened asking for *574 judgment against plaintiff in the sum of $525.02, representing an amount allegedly owed by plaintiff to said defendant resulting from their business relationship. The first item which Myrmax claimed as a credit against plaintiff was the expenditure of $3,000 by Myrmax for entertainment at the Monteleone Hotel in New Orleans for public relations on behalf of plaintiff, which Myrmax contended was specifically authorized by plaintiff. Myrmax claimed additional credits in the sum of $6,846.84 for commissions and services rendered by Myrmax to plaintiff, which commissions Myrmax claimed were authorized by defendant Rosenfield either with actual or apparent authority, or in the alternative, were owed by plaintiff under quantum meruit. Defendant Rosenfield answered admitting that the $3,000 hotel expenditure was specifically authorized by plaintiff in that he conveyed this offer to Myrmax with actual authority, but Rosenfield denied that he had any authority to commit plaintiff to pay the commissions sued for or that he had so represented to Myrmax. At the conclusion of the trial, the trial court held that the $3,000 hotel expenditure was specifically authorized by plaintiff and further held that Myrmax was entitled to receive from plaintiff a credit under quantum meruit in the sum of $6,254.29. Deducting the sum of these two credits from the principal amount sued for by plaintiff left Myrmax owing plaintiff the sum of $67.53, and judgment was rendered in favor of plaintiff and against Myrmax accordingly. Plaintiff's suit against Rosenfield was dismissed as was Myrmax's reconventional demand. From this judgment plaintiff perfected this devolutive appeal. We affirm.
Appellant assigns as its first specification of error the trial court's allowance of the $3,000 hotel expenditure. The trial court disposed of this issue in the following manner:
"From the evidence that I've heard I feel that Mr. Rosenfield, as sales manager of the company, not only acted with apparent authority to bind his company for $3,000.00 to Monteleone Hotel but as far as the court is concerned had authority to bind the company; and from all the evidence that I have seen, with the exception of one little notation reading `No action,' the company knew that it was bound. The court would like to point out that there was sufficient consideration for the incurment [sic] of that particular item, as far as the court is concerned, because there had already been substantial sales made to the State of Louisiana and there was the possibility of a great deal more sales being made to the State of Louisiana not only as a result of this cocktail party but it opened up completely new areas, and I think it would redound to the absolute benefit of the plaintiff corporation." (Oral Reasons for Judgment, Record, p. 32)
* * * * * *
"The evidence showed that defendant did in fact pay $3,000.00 to the Monteleone Hotel for expenses of an education superintendent's meeting. The court is convinced that defendant is entitled to a credit for this amount. The evidence and exhibits clearly show that plaintiff bound itself to pay this amount. (See P-5, Rosenfield-2 and Rosenfield-3.)" (Written Reasons for Judgment, Record, pp. 28, 29)
The resolution of this issue essentially required a determination of credibility of the witnesses. Defendant Rosenfield testified that he received express oral authorization from his immediate superior, Denis F. Mulvahill, and in turn communicated this authorization to Mario S. Termini, president of Myrmax. In this connection, however, Mr. Rosenfield testified that he received express authorization from Mr. Mulvahill in the sum of $2,500 rather than $3,000. Mr. Mulvahill admitted that a conversation took place between Mr. Rosenfield and him, but he categorically denied that he ever authorized either the $2,500 or the $3,000 expenditure.
*575 It is well settled that factual conclusions of the trier of fact are entitled to great weight and should not be disturbed upon appellate review in the absence of manifest error, especially when they are based upon the evaluation of the credibility of opposing witnesses. Kendrick v. Kendrick, 236 La. 34, 106 So.2d 707 (1958); Orlando v. Polito, 228 La. 846, 84 So.2d 433 (1955). Our review of the record satisfies us that the trial court committed no manifest error in accepting Mr. Rosenfield's assertion that Mr. Mulvahill did expressly authorize the $2,500 expenditure in this connection.
Appellant takes the position in the alternative that Myrmax should receive credit of only $2,500 rather than $3,000, or in the further alternative and if credit is given in the sum of $3,000, appellant should have judgment against Rosenfield for the $500 amount which exceeded the authority he received from Mr. Mulvahill. While it is true that Mr. Rosenfield testified he received only express authorization for $2,500, the evidence reflects that Mr. Termini through his other corporation paid the full $3,000 and sought credit in that full amount from appellant. In particular, in a letter dated November 10, 1966, sent by Mr. Termini to Mr. Rosenfield of Readco Industries, Inc., there appears the following complaint:
"To began [sic] with Readco's reluctance to pay bills that are due is giving me unwarranted trouble * * *.
"2. $3,000 to Montelone [sic] Hotel was to be sent as soon as instructions were received by you about two weeks ago & they are questioning & doubting me & if not paid by 11/18/66 I will have to pay." (Rosenfield Exhibit No. 1)
The evidence reflects that this payment was indeed made on November 25, 1966. (Plaintiff Exhibit No. 6; Rosenfield Exhibit No. 3) The evidence further reflects that on July 21, 1967, a letter was written by Mr. John D. Harrington, Internal Auditor of appellant, to a Mr. White of the Monteleone Hotel, the body of which reads as follows:
"To confirm our recent telephone inquiry regarding the payment of $3000 to your hotel by Southern Floor Company, Inc., we would like, if possible, a copy of the bill incurred by the Chief State School Officers National Convention.
"This is part of our cooperative advertising program and we need detail in order to reimburse our dealer. Any help you can give me would be greatly appreciated." (Rosenfield Exhibit No. 2)
We are satisfied from the evidence, accordingly, that even if Mr. Mulvahill originally only expressly authorized the $2,500, appellant was fully aware that a $3,000 expenditure had been made by Myrmax on behalf of appellant, and under the law, appellant is held to have ratified the full expenditure and is held to have ratified the representation by its agent, Mr. Rosenfield, to Mr. Termini of Myrmax that Myrmax would receive reimbursement of the full $3,000 expenditure. In Acadian Production Corp. of Louisiana v. Savanna Corp., 222 La. 617, 63 So.2d 141 (1953), the Louisiana Supreme Court held that a contract entered into or other transaction engaged in without authorization from governing authorities of a corporation may be ratified either expressly or by implication of those having the authority, provided the action was not prohibited by the corporation's charter or by statute, and is not contrary to public policy, and such ratification is retroactive in effect and equivalent to prior authority. Similarly, in Hugh Allison & Co. v. Watson, 36 La.Ann. 616 (1884), the Louisiana Supreme Court held that the acts of an agent, even if unauthorized by his mandate, or in violation thereof, are considered as ratified by the principal by acquiescence if, after knowledge of the same, he does not repudiate them. Similarly, in Lafitte v. Godchaux, 35 La.Ann. 1161 (1883), the Supreme Court held that an invalid contract by an agent will be held as ratified by the principal, after a tacit acquiescence *576 and a long silence. Such ratification of unauthorized acts by an agent is provided for by Louisiana Civil Code Articles 3010 and 3021. Accordingly, appellant must be held under the evidence to have ratified the full $3,000 expenditure, thus entitling Myrmax to a credit in that amount, and thus precluding any recovery by appellant against its agent, Mr. Rosenfield.
Appellant assigns as its second specification of error the allowance by the trial court of recovery under quantum meruit in the sum of $6,254.29. The trial court disposed of this issue in the following manner:
"In the course of defendant's warehouse operations it was called upon from time to time to move shipments outside of its territory. Under the terms of the contract defendant received its commission only on sales made within its territory. Soon this became a problem because approximately two-thirds of the business was going out of defendant's territory. Mr. Termini discussed the problem with Mr. Rosenfield and told him he wanted a ten per cent commission on all sales, through the warehouse, outside of his territory. Mr. Rosenfield said that he thought defendant should receive some commission for this work and that he would recommend five per cent to his superiors. Mr. Rosenfield never agreed to this five per cent but said the final word would have to come from his superiors in Reading, Massachusetts. No such authority ever came from Reading.
"Defendant claims as a credit a commission for a sale made to the Mark Company Products of Houston amounting to $8,268.90. The facts show that representatives of Mark Company Products came to Baton Rouge to the warehouse to see defendant's demonstration. This sale was actually made by defendant after the Mark Company Products had come to Baton Rouge to see defendant's demonstration. The court definitely feels that a commission of five per cent on a quantum meruit theory should be awarded on this sale. This credit amounts to $413.45.
* * * * * *
"Defendant's final claim is for a five per cent commission on sales of $116,816.80 shipped from the Baton Rouge warehouse to areas outside of defendant's territory. Defendant contends that recovery of this commission should be made under a theory of quantum meruit. The evidence clearly showed that shipments from the Baton Rouge warehouse outside of defendant's territory were originally intended to be on an emergency and occasional basis only. As it turned out, these shipments soon amounted to two-thirds of the total warehouse activity. Mr. Termini could not continue with this arrangement so he consulted with Mr. Rosenfield about receiving a ten per cent commission for these shipments. Mr. Rosenfield testified that he would recommend a five per cent commission. He testified further that he felt five per cent was a reasonable commission for the work involved. Mr. Termini testified that he had gotten ten per cent on out of territory shipments when he had the Tourginol dealership.
"The jurisprudence of this state is well settled on the theory of quantum meruit.
"The rule as stated in Bascle v. Perez, 224 La., 1014, 71 So.2d [551], is as follows:
"* * * where one employs the services of another without specifying what compensation will be paid therefor, or where one avails himself of the services of another in the performance of a task, he is bound to compensate the person so employed or who performs such a service. (Citing a multitude of cases.) This jurisprudence is founded on the moral maxim of the law that no one ought to enrich himself at the expense of another. Article 1965 of the Revised Civil Code.'
"The court was convinced from the evidence that plaintiff did indeed receive substantial benefits from defendant's services. It is true that plaintiff paid for all expenses *577 such as rent, telephone, freight, etc., and that defendant was not out of pocket for any of these expenses. It is also true that plaintiff received the services of Mr. Termini and his bookkeeper and paid nothing for these services. The court feels that these services were quite substantial in nature. It is obvious that the shipments could not have been made without these services.
"Plaintiff argues, quite forcibly in its memorandum, that defendant did not prove the value of the services it rendered, however, Mr. Rosenfield testified that he thought five per cent was reasonable and he would recommend that figure to his superiors. Mr. Termini testified that he had charged ten per cent to perform the same services for Tourginol. The argument of plaintiff can be disposed of by referring to the case of Bordelon Motors v. Thompson, [La.App.], 176 So.2d 836, where the court said:
"`In the case of Gilmore, et al. v. Gasquet, 178 La. 437, 153 [151] So. 763 (1933), the court stated the general rule that plaintiff in a suit on quantum meruit should recover "* * * as much as he reasonably deserves for his services, and the time and labor required * * *" There is no definite test to determine the reasonable value of such services. It is a matter of equity, depending on the circumstances of each case. See Haase v. Brumfield, La.App., 137 So.2d 680 (1st Cir. 1962) and authorities cited therein. Certainly a great deal of discretion should be left to the trial judge.'
"Applying the above test to the case at bar, the court feels that a five per cent commission is reasonable for the services rendered plaintiff by defendant in shipping orders outside its territory. Two-thirds of all shipments went outside of this territory, and the time and labor required certainly justify this commission." (Written Reasons for Judgment, Record, pp. 29-31)
Our review of the record satisfies us that the trial court has adequately disposed of this matter, has answered all essential questions posed by appellant in opposition to this award under quantum meruit and was correct in holding that Myrmax had carried the burden of proving its right to recover under quantum meruit for services performed by it in appellant's behalf and that the five per cent in quantum meruit constituted a just recovery for the value of these services. Cf. Nugent v. Downs, 230 So.2d 597 (La.App.3rd Cir. 1970), where recovery in quantum meruit for services performed by an attorney on behalf of a personal injury claimant was fixed at thirty percent of the amount recovered.
The judgment appealed from is affirmed, all costs incurred in connection with this appeal assessed to appellant.
Judgment affirmed.