255 So.2d 188 (1971)
CRANE SUPPLY COMPANY
v.
DRAKE & PLANCHE, INC.
No. 4578.
Court of Appeal of Louisiana, Fourth Circuit.
November 8, 1971.
Rehearing Denied December 6, 1971.
*189 Samuel S. Dalton, New Orleans, for plaintiff-appellant John E. Drake.
Mmahat, Gagliano, Duffy & Giordano, Nicholas J. Gagliano, Metairie, for defendant-appellee.
Before SAMUEL, REDMANN and GUIDRY, JJ.
GUIDRY, Judge.
Plaintiff, John E. Drake, instituted the present action against Crane Supply Company, Division of the Crane Company seeking to have a certain judgment rendered on January 2, 1968 against him in solido with Drake & Planche, Inc., in the amount of $27,594.93 declared an absolute nullity. After trial on the merits there was judgment in favor of defendant, hereinafter referred to as Crane, dismissing plaintiff's suit at his costs. It is from this adverse judgment that John E. Drake prosecutes the instant appeal.
The facts giving rise to the instant controversy are essentially undisputed and as follows:
On November 5, 1965, Crane filed suit against Drake & Planche, Inc., in which Crane sought to recover $62,495.24, the value of certain merchandise and materials allegedly sold to the corporate defendant on open account. Service of citation was obtained on November 10, 1965 through the registered agent of the corporation and on November 29, 1965, answer to the suit in the form of a general denial was filed on behalf of Drake & Planche, Inc., by Mr. Roland R. Selenberg, Attorney for the corporation. The matter was subsequently placed on the call docket and on March 22, 1966 a pre-trial conference in the matter was held before the trial judge at which time Crane was given permission by the court to amend its original petition "to include a personal action against the officers and directors of the defendant Drake & Planche, Inc., for the amount claimed against said corporation".
On April 19, 1966, the date on which the claim against Drake & Planche, Inc. had originally been set for trial, Crane's supplemental and amending petition was filed. This pleading reduced the amount of the initial claim against Drake & Planche, Inc. and, with allegations directed toward piercing the corporate veil, named Mr. Drake and Mr. Planche individually as parties defendant for the first time. A copy of this *190 petition was physically handed to Mr. Roland R. Selenberg, the Attorney for Drake & Planche, Inc. who was present in court that morning for the trial of the matter against the corporation. No attempt was made to serve Mr. Drake or Mr. Planche individually by either domiciliary or personal service, despite the fact that both individuals were with Mr. Selenberg at the time the petition was handed to him. Instead Mr. Selenberg signed a clause on the back of the petition and thereby purported to accept service on behalf of the two newly named defendants John E. Drake, and A. J. Planche, Sr., as well as the corporation. On May 4, 1966 Mr. Selenberg filed an answer to Crane's supplemental and amended petition, supposedly on behalf of Mr. Drake, Mr. Planche and the corporation.
Thereafter on September 17, 1966 Crane and Drake & Planche, Inc., through their respective attorneys, entered into a stipulation whereby the corporation agreed to allow judgment to be entered against it and in favor of Crane in the sum of $55,189.87. Said stipulation reserved to Crane "its rights to further prosecute its claims asserted in the proceedings against the other defendants", John E. Drake and A. J. Planche, Sr. Accordingly Crane obtained a judgment against the corporate defendant on September 17, 1966 as per the stipulation and against the individual defendants, after trial on the merits, on January 2, 1968. Mr. Drake was not present in court when the matter was tried on the merits, having changed residence to another state. He alleges that the first knowledge he had that judgment was rendered against him was when proceedings were instituted in Seattle, his present residence, to make this judgment of January 2, 1968 executory. The institution of proceedings against him in Seattle prompted Mr. Drake's present action for nullity.
The basis of plaintiff-appellant's argument that this judgment of January 2nd is null and void is twofold. First, plaintiff argues that the handing of the supplemental and amending petition to Mr. Selenberg did not constitute a valid service under LSA-C.C.P. art. 1201 and that therefore any subsequent judgment rendered against plaintiff-appellant was void for lack of citation. Secondly, plaintiff argues that he at no time gave Mr. Selenberg the requisite mandate to act as his attorney and therefore he is not bound by any actions taken by Mr. Selenberg supposedly on his behalf.
We are satisfied that Mr. Drake did not specifically waive citation and service pursuant to the terms of LSA-C.C. P. art. 1201 by filing a written waiver into the record. Therefore we are called upon to determine whether the delivery of the supplemental and amending petition to Mr. Selenberg rather than to Mr. Drake individually, constituted a valid service on Mr. Drake. We are of the opinion that it did not.
Since neither personal nor domiciliary service was made on Mr. Drake, valid service could have been made on him only pursuant to the terms of LSA-C.C.P. art. 1235, which provides as follows:
"Service is made on a person who is represented by another by appointment of court, operation of law, or mandate, through personal or domiciliary service on such representative."
The record establishes that Mr. Selenberg was not the legal representative of Mr. Drake at the time he was given this petition. Mr. Selenberg was the attorney of record for the corporate defendant, Drake & Planche, Inc., only. He was not the appointed agent for service of process of the individual defendant, John E. Drake, nor does he so contend. There was no mandate at this point in time given to Mr. Selenberg by Mr. Drake to act on his behalf in any manner whatsoever and consequently Mr. Selenberg's signature accepting service on behalf of Mr. Drake was without force and effect as far as the plaintiff-appellant was concerned.
*191 Having thus decided that the initial service of the petition was an invalid one insofar as Mr. Drake was concerned, we are next called upon to determine whether any subsequent actions on the part of Mr. Drake cured this initial defect in the proceedings.
The record reflects that both Mr. Drake and Mr. Planche were present when the document was handed to Mr. Selenberg. Mr. Selenberg further testified that thereafter he conferred with both gentlemen, explained the nature of the petition to them, and informed them that they were being sued personally along with the corporation for the debt due to Crane. Subsequently Mr. Drake met with Mr. Selenberg on several occasions giving him detailed information relative to certain financial matters and utilizing this information, Mr. Selenberg filed an answer to the supplemental and amended petition purportedly on behalf of Mr. Drake and Mr. Planche individually. Moreover Mr. Selenberg testified that he specifically told Mr. Drake that the answer was being filed in an attempt to defend him in the cause of action asserted in this supplemental pleading.
Although Mr. Drake emphatically denies that he authorized Mr. Selenberg to file an answer on his behalf, or that an attorney-client relationship ever existed between himself and Mr. Selenberg, the trial judge specifically reached an opposite conclusion in his reasons for judgment wherein he states:
"* * * as a matter of fact, the record is in such a state that, when considered with the testimony of the attorney, it leads the Court to the conclusion that the attorney was in fact representing both the corporate defendant and the individual defendants, and that both individual defendants were well aware of this."
It is well settled in our jurisprudence that findings of fact made by the trial court, especially when the credibility of witnesses is involved, are to be given great weight. Only if manifestly erroneous will the conclusions of the trial court be disregarded. Readco Industries, Inc. v. Myrmax Specialties, Inc., La.App., 236 So. 2d 573 (1970); Gay v. Travelers Ins. Co, La.App., 234 So.2d 241 (1970). We find no such manifest error on the part of the trial court in this instance. Considering the facts as recited above we are of the opinion that at the time Mr. Selenberg filed the answer to the supplemental and amended petition he was acting under a mandate from Mr. Drake and that in fact an attorney-client relationship did exist between the two at that point in time.
The effect of the filing of an answer on behalf of Mr. Drake by his attorney, Mr. Selenberg, was to waive any objection Mr. Drake might have had to the original faulty service of citation. The filing of an answer constituted a general appearance by Mr. Drake and he thereby subjected himself to the jurisdiction of the court to render judgment against him. LSA-C.C.P. art. 7, 925. The fact that Mr. Drake was no longer a resident of this State at the time the matter was tried on the merits does not preclude the court from rendering judgment against him after he submitted to its jurisdiction by making a general appearance.
At this point it should be noted that Mr. Drake's involvement in these proceedings was not limited to the filing of an answer by Mr. Selenberg on his behalf. The record reflects that throughout the proceeding Mr. Drake was actively involved in the litigation not only against himself but against the corporation as well. He approved the stipulation wherein the corporation agreed to allow judgment to be rendered against it. He was also present with Mr. Selenberg at a pre-trial conference, held after judgment had been rendered against the corporation, wherein the matter pending against him individually was discussed. It is inconceivable that Mr. Drake could have involved himself to such an extent *192 in these proceedings, utilizing the services of Mr. Selenberg at all times, and still suggest that an attorney-client relationship did not exist and in fact that he did not understand the nature of the proceedings pending against him. Moreover even after Mr. Drake moved to his present domicile in Seattle, Washington, Mr. Selenberg kept him informed by letter as to the state of the matter presently pending.
Even if it be assumed arguendo that there was no specific mandate by Mr. Drake to Mr. Selenberg which authorized the latter to represent the former, the record as a whole clearly supports a finding that Mr. Drake knew of the appearance made on his behalf by Mr. Selenberg; acquiesced therein; and remained silent in regard thereto for almost two years following the filing of an answer, all of which amounts to acquiescence and estoppel by silence, which as stated in Wadsworth v. Alexius, 234 La. 187, 99 So.2d 77 (1958) "* * * adds up to ratification of an unauthorized agency."
The plaintiff-appellant relies heavily on the case of Wadsworth v. Alexius, supra, in support of his contention that an attorney-client relationship did not exist between himself and Mr. Selenberg and that Mr. Selenberg was not authorized to make a general appearance on plaintiff-appellant's behalf. However, we find this case factually distinguishable from the one presently before us.
The Wadsworth case, supra, was an action to annul a judgment which ordered the partition by licitation of a piece of immovable property in which plaintiff had owned a 1/6th interest and to set aside two partition sales of the land held under authority of that judgment. The main thrust of the nullity action addressed itself to plaintiff's allegation that she was neither cited nor appeared in the partition proceeding and that the attorney who purported to represent her was without authority to do so.
Mrs. Selma Wadsworth was named as one of several defendants in the original partition suit and it was conceded that she was never cited in that proceeding nor were any of the defendants. Instead two of the defendants, brothers of Mrs. Wadsworth, had employed counsel to advise them prior to the filing of suit and service was purportedly made on all defendants through this attorney. The attorney then filed an answer purportedly on behalf of Mrs. Wadsworth as well as her brothers and the matter was reduced to judgment. However in the Wadsworth case, the court found that Mrs. Wadsworth had not employed the attorney who filed the answer nor had she authorized her brothers to engage the services of the attorney on her behalf. There was never any contact between Mrs. Wadsworth and the attorney either personally or through correspondence; nor did Mrs. Wadsworth take part in the proceedings in any manner. Accordingly the court found that since Mrs. Wadsworth had not been properly cited and had not made a general appearance in the proceeding, the initial judgment of partition was null and void.
We are in complete agreement with the holding in Wadsworth. But factually the instant case differs from Wadsworth. We agree with the conclusion of the trial court that Mr. Drake employed Mr. Selenberg to represent him in the instant proceeding. Having made a general appearance through the answer filed by Mr. Selenberg, his attorney, Mr. Drake cured any initial defect in the proceedings arising from the original faulty service of citation.
For the foregoing reasons the judgment of the lower court is affirmed. Costs of these proceedings are to be borne by Plaintiff-Appellant.
Affirmed.