289 So.2d 835 (1974)
Mrs. Alice M. CANNON
v.
Stanley A. BARON.
No. 5819.
Court of Appeal of Louisiana, Fourth Circuit.
February 6, 1974.
Albert B. Barone, Jr., New Orleans, for Mrs. Alice M. Cannon, plaintiff-appellant.
Stanley A. Baron, in pro per.
Before GULOTTA and BOUTALL, JJ., and WICKER, J. Pro. Tem.
BOUTALL, Judge.
This is a suit by Mrs. Alice M. Cannon against her former attorney, Stanley A. Baron, seeking to recover damages suffered as a result of defendant's alleged negligent handling of her claims and interest in the Succession of Arch Y. Guitar. The trial court rendered judgment dismissing her suit, and she prosecutes this appeal.
The facts are these. A certain Arch Y. Guitar had lived in the home of plaintiff-appellant Mrs. Alice M. Cannon from 1956 until his return to Missouri, his State of birth, in April of 1963. His return was apparently for the purpose of taking care of an ailing sister who was suffering with a terminal case of cancer. The sister died on November 5, 1963 and shortly thereafter Mr. Guitar died on November 30, 1963, while still in Missouri.
Upon learning of Mr. Guitar's death, Mrs. Cannon within a few days employed Stanley A. Baron as her attorney to represent her interest in his estate. At this time she was convinced that Mr. Guitar had left a Will leaving her all of his possessions in the State of Louisiana, or at least some portion thereof. However, no Will was ever found and Mrs. Cannon, because she had no legal relationship with Mr. Guitar, had no basis for recovery of any of the assets of the estate as an heir or legatee. Herein lies the crux of the problem. Mrs. Cannon insists that she immediately informed Mr. Baron of her standing as a creditor against the estate, and Mr. Baron asserts that she did not so advise him. In any event the Succession was finally closed with Mrs. Cannon getting nothing, and she complains that Mr. Baron's lack of action in representing her claims and in fact his representation of adverse interests, has caused her to lose her right to recover these claims.
The record shows that appellant did indeed employ Mr. Baron as her attorney to represent her interest in the estate. Several conversations were had with Mr. Robert C. Smith, an attorney in Columbia, Missouri, who represented the Succession in Missouri, and it was determined, in view of the fact that Mrs. Cannon was claiming under a Will that Mr. Baron should handle the ancillary proceedings in Louisiana and *836 ascertain if a Will was left by the decedent. After thorough search was made, not only in Louisiana, but also in Missouri, it was finally determined that no Will was left. Mr. Baron and Mrs. Cannon made a trip of several days duration to Columbia, Missouri, in connection with the Will and for discussions with the attorney handling the estate there. In the meantime, Mr. Baron had collected the proceeds of two small insurance policies on behalf of Mrs. Cannon and according to his view of the matter, his employment relationship with Mrs. Cannon was basically at an end, although he hoped that a Will would turn up later. In any event at this point he agreed with the Missouri attorney to continue to handle the ancillary proceedings in Louisiana and close out the Succession here. Since this necessarily involved persons other than Mrs. Cannon inheriting the estate, we see the beginnings of a conflict of interest.
However the relationship between the parties was apparently cordial, and the record discloses that Mr. Baron had worked out an agreement with the Missouri attorney wherein the prospective heirs of the decedent would gratuitously give some amount to Mrs. Cannon. This came about because of the obviously close feeling and tender affection that the decedent had for Mrs. Cannon for over seven years. While it is disputed that the parties were physical lovers, yet certainly they had a deep affection for each other and the conditions upon which they lived were that Mr. Guitar lived in Mrs. Cannon's house in a separate room, but she took care of all of his needs as if he were a member of the family. There are a large number of letters between the parties introduced in evidence which clearly demonstrate their relationship. The attorney obviously concluded, because of the friendly relationship between all concerned in the Succession that there would be no difficulty in pursuing the Succession to a close, and at the same time obtaining some benefits for Mrs. Cannon.
However such was not to be the case. The evidence further discloses that while all of the Succession proceedings were still unsettled, that Mrs. Cannon revisited Missouri and made accusations against various attorneys, heirs and even the Probate Judge, accusing them of destroying not only the decedent's Will but the Will of certain relations who had predeceased him.
Based upon the facts shown in this record, we do not conclude that there was any fraud or bad faith on the part of Mr. Baron. On the other hand, we must agree that an ethical problem arose in his handling of the ancillary Succession after it was determined that the decedent died intestate. However, the point here is that even though there was an ethical problem with conflict of interest, is there a showing that this caused Mrs. Cannon the damages of which she complains.
Mrs. Cannon contends that she supported Mr. Guitar during his seven years stay, paying for his rent, food and other necessities. In addition she claims that she paid $50.00 each for his entrance into Mercy Hospital on two occasions, one in 1959 and one in 1962; that she had paid all of the notes due on a 1960 Plymouth automobile belonging to him; that she paid for certain repairs and bills incurred in connection with a subletting of the premises at 411 Bourbon Street; that she advanced him $385.00 in cash which was never repaid, and that she paid numerous miscellaneous bills, including tax bills on his behalf. She insists that she told Mr. Baron of all of these items and had retained him to recover these amounts for her. It is his testimony that she did not make any of these claims to him, except that on a few instances she mentioned that she had paid some bills, and he informed her to bring him the bills so that he could get reimbursement for her, but she never returned with the bills nor any evidence that she had paid them. It is apparent that she made numerous trips to the attorney's office, however it is equally apparent that the subject of these trips was the fact that *837 she was in communication with the decedent who informed her that he had made a Will and she would find it if she continued to search.
As we appreciate the evidence in this case it revolves about the conflict in the testimony of the witness which the trial judge in his Reasons for Judgment, resolved in favor of the appellee. It is well settled in our law that the judge is the trier of fact, and his findings will not be disturbed on appeal unless there is a showing of manifest error. The trial judge is in the best position to observe and hear the witnesses, and his findings on the matter of credibility of witnesses and conflicts in testimony are entitled to great weight and should not be reversed except on a showing of an abuse of the much discretion vested in the trier of fact in such instances. Crane Supply Company v. Drake & Planche, Inc., 255 So. 2d 188 (La.App. 4th Cir. 1971); Higginbotham v. Higginbotham, 270 So.2d 247 (La.App. 1st Cir. 1972). There is no manifest error apparent in this case, nor is there any showing of abuse of the trial Judge's discretion in his ruling.
A large portion of the record of this case involves evidence to demonstrate that Mrs. Cannon did have a valid claim against the Succession for certain debts. This point has also been presented to us in argument. However, the record discloses that the Succession is still open in St. Tammany Parish and that Mrs. Cannon is asserting the merits of her claim there. For that reason, and in view of the fact that we have maintained the ruling of the trial Judge above, we feel that we should not comment upon that portion of the case, since it would be mere dicta here.
For the reasons above expressed, we are of the opinion that the judgment appealed from should be affirmed at appellant's cost.
Affirmed.