IDA VAUGHN *v.* AUSTIN VAUGHN

5-5942

481 S.W. 2d 318

Opinion delivered June 19, 1972

*Phil Stratton* and *Clark, Clark, & Clark* for appellant.

*George F. Hartje* for appellee.

LYLE BROWN Justice. Ida Vaughn instituted this suit for divorce and the disposition of forty acres of land allegedly held as tenants by the entirety. The trial court denied the divorce, holding that Ida was barred by laches and estoppel from denying the validity of a divorce granted between the parties in 1946. As to the forty acres the court held that a deed in 1957 from Ida and Austin (appellee) to a third party and then back to Austin was void for lack of consideration and declared that although Ida and Austin were divorced when the deed was first taken, Ida owned a one-half interest as a tenant in common. The court dismissed the prayer for dissolution of divorce and

Ida appeals; Austin cross-appeals from that part of the decree declaring Ida to own an interest in the forty acres.

The principal actors in this case are Ida Vaughn, Austin Vaughn, and Bertha Vaughn. For clarity and brevity they will be referred to by their first names. The background facts, which will shortly be recited, are hardly disputed.

In 1922, Austin and Bertha were married in New York. In 1944 the couple moved to Cleburne County, Arkansas. Austin shortly became acquainted with Ida and she became pregnant by him. In November 1945 Austin obtained a divorce from Bertha. Then in December, Austin married Ida and the following February Ida gave birth to the child. In March 1946 a divorce suit was filed and divorce granted in the Faulkner Chancery Court with Austin as plaintiff. (Ida professes that she knew nothing about the divorce being granted until 1970.) At or about the time the divorce was granted, Austin left for California and took up residence with Bertha, the first wife. From 1946 until 1948 Austin made trips back to Arkansas to visit Ida and the daughter. Then in July 1948 a second child, admittedly fathered by Austin, was born to Ida.

In early 1950 Austin, in order to provide better accommodations for Ida and the two daughters, purchased a forty acre farm in Faulkner County, Arkansas. The deed was made to Austin and Ida, as husband and wife. (Austin says the deed was executed after he left Arkansas and that it was Ida who had her name placed on the deed.) Austin and Bertha, working for the same employer in California as chauffeur and housekeeper respectively, married again in 1950. It should be said, and to Austin's credit, that through all the years and until the last daughter was married, he sent money regularly to help support Ida and the two daughters.

In September 1957 Austin procured a deed to the forty acres from Ida. The property was deeded to a third party and then back to Austin (Ida said this deed was obtained by Austin representing that it was for tax purposes). In 1970 Austin asked Ida to surrender possession of the forty acres. Ida says she then became suspicious and consulted an attorney. They checked the records and learned for the

first time, so she says, of the divorce of 1946. Thereupon this suit was filed to set aside the 1946 divorce, to grant a divorce to Ida, and to obtain a division of the forty acres. The chancellor held that Ida had knowledge of the 1946 divorce proceedings long before 1970 (when she filed her suit); the chancellor further held that the deed of 1957 to the forty acres was without consideration and that Ida and Austin were tenants in common, and ordered the acreage sold.

With respect to the 1946 divorce proceedings we are unable to say the findings of the chancellor were against the preponderance of the evidence. There was a waiver of service bearing the name of Ida Vaughn and she conceded that it appeared to be her signature. When the divorce was granted an article appeared in a local newspaper which recited the divorce and the date and place of marriage of the couple; Ida was living in the community. For a number of years monthly checks were sent from California drawn on the joint bank account of Bertha and Austin; sometimes those checks were signed only by Bertha. Ida's two daughters learned of the divorce in their early teens and Ida made no investigation. In 1962 Ida wrote to Austin:

> I am going to buy me an acre. . . .could never be content living in your and B [Bertha's] house. . .she [Darlene, the younger daughter] might find out she don't have a legal name. . . .I will never try to cause any trouble, and any time you all want this house just let me know. . . .The man [leasing agent] told me your and her deed not recorded. . . .

Then two months later Ida wrote to Austin:

> Things can never be again as they once were. I will stay here if you want me to until the girls are grown and on their own, then I want to go away. . . .You don't even like me any more. It is hard to live here on your place. . . .I think that will be better for everyone.

In *Maples* v. *Maples,* 187 Ark. 127, 58 S.W. 2d 930 (1933) a divorce was obtained by the husband in 1917 through fraud. The wife, with knowledge of the divorce, waited until 1931 to attack it. This court held that "we

feel constrained to hold that she waited too long." The general rule requiring prompt action in attacking judgments for fraud, duress, accident, mistake, or surprise, was said in *Maples* to be equally applicable to decrees for divorce.

This brings us to a consideration of the point on cross-appeal, namely that the court erred in declaring Ida's conveyance of her interest in the forty acres to fail for want of consideration. The chancellor found that "The evidence shows no consideration. The chancellor found that "the evidence shows no consideration for the conveyance divesting her of her half interest". In that respect we find error. In *Ferguson* v. *Haynes*, 224 Ark. 342, 273 S.W. 2d 23 (1954) we said this: "Since a deed is a present grant rather than a promise to be performed in the future, no consideration is required." To the same effect see *Cannon* v. *Owens*, 224 Ark. 614, 275 S.W. 2d 445 (1955).

Affirmed on appeal, reversed on cross-appeal.