518 So.2d 482 (1988)
In the Matter of the SUCCESSION OF Talmadge D. BICKHAM, Jr.
No. 87-C-1136.
Supreme Court of Louisiana.
January 18, 1988.
Rehearing Denied February 25, 1988.
*483 Larry S. Bankston, George M. Cotton, Carmouche, Gray & Hoffman, Baton Rouge, for applicants.
Curtis K. Stafford, Jr., Tom F. Phillips, Taylor, Porter, Brooks & Phillips, Baton Rouge, for respondents.
DIXON, Chief Justice.
The validity of an Arkansas divorce for a Louisiana couple is at issue here. The district court declared the divorce judgment null and void; the court of appeal affirmed. In The Matter of the Succession of Talmadge D. Bickham, Jr., 506 So.2d 910 (La.App. 1st Cir.1987).
Talmadge Dennis Bickham, Jr. (the decedent) married Marie Bickham in Mississippi on March 29, 1958. The couple established their matrimonial domicile in East Baton Rouge Parish and had two children, Talmadge Dennis Bickham, III and Renee LaRue Bickham Priest (the heirs). Talmadge Bickham, Jr. died on February 11, 1982, and Marie filed a petition to probate the decedent's statutory will and to be confirmed as testamentary executrix, the order for which was signed on February 16, 1982.
On May 31, 1985 Marie filed a petition requesting the court to permit the filing of a detailed descriptive list of the succession's assets and liabilities. She also requested a declaration that: the 1958 marriage between herself and Talmadge had not terminated prior to his death; the 1974 Arkansas divorce in which Talmadge was the plaintiff and Marie the defendant was null and void for lack of jurisdiction; the separation agreement and property settlement and renunciation of the community of acquets and gains incorporated into the divorce settlement were null and void.[1] The heirs excepted on the grounds of res judicata, no right of action, no cause of action, and nonjoinder of necessary and indispensable parties. At the November 8, 1985 hearing on the exceptions, the trial court in oral reasons dismissed all exceptions *484 and declared the July 23, 1974 divorce judgment, as well as the separation agreement and property settlement and the renunciation of community of acquets and gains, both dated April 4, 1974 and incorporated into the divorce judgment, null and void ab initio and cast the succession for costs.
The court of appeal affirmed the lower court judgment, except to cast the heirs for all costs of the proceedings.
Talmadge and Marie were marriage partners and business partners. They lived in East Baton Rouge Parish on a large cattle farm that they owned and operated. The couple worked together managing that operation, and at one point when Talmadge was involved in another business venture, Marie essentially ran the farm alone. Together, Marie and Talmadge managed several of their other business ventures which involved mostly buying and selling real estate. At Talmadge's death, his net estate exceeded $20,000,000.
In 1973 or 1974 Talmadge admitted to Marie that he was involved in an affair with Pamela Kellum Mustin, a woman who had known the Bickhams for several years. Claiming that Pamela was threatening suicide and that he needed to placate her, Talmadge asked Marie to sign a separation agreement and property settlement and a renunciation of community acquets and gains. Marie agreed, signing the documents in April, 1974; they are reproduced below.
*485 
*486 
*487 
*488 
*489 In May, 1974 Talmadge filed for divorce in Arkansas alleging that he lived at 801-A Fairview Road, Crossett, Arkansas and that he had been a resident of Ashley County, Arkansas for more than ninety days. On July 8, 1974 Marie signed a waiver, entry of appearance and answer which was notorized in East Baton Rouge Parish.
*490 
*491 
This document was filed in the divorce proceedings. The Arkansas Chancery Court then granted the divorce.
Marie claims that she had not received notice of the divorce decree, but admitted that she learned of it in December, 1974, on the same day that Talmadge told her that he had married Pamela. Talmadge also related to Marie that Pamela had opened a joint checking account in his name and Pamela's; that Pamela's mother had given Pamela and Talmadge a considerable check as a wedding present. Marie also understood that Pamela had sent out announcements of the marriage.
In March, 1975 Marie read a front page article in the then Baker News entitled "Kaiser Cites Mrs. Bickham." The accompanying photograph identified the recipient of the "One Person Can Make a Difference" award as Pamela Mustin Bickham.
During this time Talmadge and Marie continued to manage the farm; they also maintained their joint bank accounts and filed joint income tax returns. Marie also claims that Talmadge continued to live on the farm with her, although she admitted that he had at least one other place to live, an apartment in Baker, Louisiana allegedly obtained "to satisfy" Pamela.
In June, 1975 Pamela filed for separation from Talmadge; these papers were served on Marie. A year and a half later, Talmadge remarried Marie on December 17, 1976. However, in January, 1977 when "some paperwork" came in the mail, Talmadge and Marie realized that the Talmadge-Pamela divorce had not been final at the time of their remarriage. Talmadge *492 and Marie, therefore, married for a third time in March, 1977.
Marie now contends that the Arkansas divorce was not valid because Talmadge was not a resident of Arkansas.
The United States Constitution provides that "[f]ull Faith and Credit shall be given in each State to the public Acts, Records and judicial proceedings of every other State." U.S. Constitution, Article IV, § 1. The United States Supreme Court, in interpreting the scope of that clause as it relates to divorce proceedings, has enunciated a test for determining when full faith and credit must be accorded a divorce decree.
"`... We believe that the decision of this Court in the Davis case and those in related situations are clearly indicative of the result to be reached here. Those cases stand for the proposition that the requirements of full faith and credit bar a defendant from collaterally attacking a divorce decree on jurisdictional grounds in the courts of a sister State where there has been participation by the defendant in the divorce proceedings, where the defendant has been accorded full opportunity to contest the jurisdictional issues, and where the decree is not susceptible to such collateral attack in the courts of the State which rendered the decree.' ..." Johnson v. Muelberger, 340 U.S. 581, 71 S.Ct. 474, 477, 95 L.Ed. 552 (1951), quoting Sherrer v. Sherrer, 334 U.S. 343, 351-52, 68 S.Ct. 1087, 1090-91, 92 L.Ed. 1429 (1948). (Emphasis added).
A defendant participates in a proceeding by entering an appearance. Johnson v. Muelberger, supra. An appearance may consist of filing a plea, answer or demurrer. Stoker v. Leavenworth, 7 La. 390 (1834); C.C.P. 7. One may also appear by signing and filing an instrument entering one's appearance in a suit. Kirk v. Bonner, 186 Ark. 1063, 57 S.W.2d 802, 804 (1933); Mutual National Bank of New Orleans v. Moore, 50 La.Ann. 1332, 24 So. 304, 306 (1898). Marie signed a document, clearly styled "Waiver, Entry of Appearance and Answer." (Emphasis added). The document is plainly written; it identifies T.D. Bickham, Jr. as the plaintiff and Marie as the defendant. It lists the court as Ashley County, Arkansas. The document answers Talmadge's complaint by admitting some allegations and denying others, requesting its dismissal. The notary's acknowledgment states that Marie knew that it was a divorce waiver and was fully aware of its legal effects. Moreover, there is no evidence that Marie did not understand the contents of the instrument or that she was under duress or was coerced into signing it. Marie entered her appearance and participated in the proceedings.
Marie's appearance in the proceedings afforded her the opportunity to contest the jurisdictional issue of Talmadge's residency. Marie's answer admitted the jurisdiction, the marriage, separation, the separation agreement and property settlement, and denied "each and every other material allegation of plaintiff's Complaint." Talmadge alleged that he had been a resident of Ashley County, Arkansas for more than ninety days. Marie did not contest that issue, although she had the ability to take any action that she wanted. Marie was a businesswoman who ran a large cattle operation, had access to bank accounts, and could have contacted a lawyer. Instead, she did nothing. Through her inaction she cooperated with Talmadge in obtaining the divorce. In the divorce proceeding, Talmadge testified through deposition that he was an Arkansas resident; Pamela's deposition attested to that same fact. Having no evidence to the contrary, the chancellor found that Talmadge had been an Arkansas resident for the requisite period of time and granted a divorce valid under Arkansas law.
This court reached a similar result in Boudreaux v. Welch, 249 La. 983, 192 So. 2d 356 (1966), in which a Louisiana plaintiff-wife who admitted that she never resided in Mississippi obtained a Mississippi divorce and then sought to attack collaterally the decree in a Louisiana wrongful death action. The husband (defendant in the divorce proceeding and decedent in the *493 wrongful death suit) had signed a document entering his appearance; the document was subsequently filed in the divorce proceeding. This court held that the filing of that document closed the jurisdictional issue of his wife's residency; the husband's active resistance to the divorce action was not essential for full faith and credit.
Under Arkansas law, Marie can not now collaterally attack the divorce decree. In Smith v. Smith, 272 Ark. 199, 612 S.W.2d 736 (1981), the husband filed for divorce in Arkansas, alleging that he was an Arkansas resident; the wife entered her appearance and the divorce was granted. When the husband was killed in an industrial accident five days later, the wife filed a motion to set aside the decree on the ground that neither party had been a resident of Arkansas and that they were both Louisiana residents. The wife alleged that the husband perpetrated a fraud on the court. The Arkansas Supreme Court held that there could be no attack on the divorce decree. The court reasoned that if the husband had been a resident of Arkansas as he had claimed, the decree was valid. If he had not been a resident, the wife could not have been ignorant of the fraud and willingly participated in it. Under either circumstance, she could not attack the decree.
In Vaughn v. Vaughn, 252 Ark. 875, 481 S.W.2d 318, 319 (1972), the wife had signed a waiver of service and the divorce notice appeared in the local paper. She had received checks from the joint account of her ex-husband and his subsequent wife. It was not until twenty-four years later that the wife attempted to attack the decree when she sued to assert her property rights over land that she considered jointly owned. The court refused to accord her relief noting there is a general rule "requiring prompt action in attacking judgments for fraud, duress, accident, mistake, or surprise." The court also cited Maples v. Maples, 187 Ark. 127, 58 S.W.2d 930, 932 (1933), which held that a wife who knew of the divorce and subsequent remarriage of her husband, and who waited until her husband was dead, fourteen years after the divorce "waited too long."
In the instant case, Marie never contested the jurisdiction of the Arkansas courts during the divorce proceeding. She never directly appealed the decree. Even assuming that Marie did not learn of the divorce until December, 1974, five months after it had been rendered, she took no action to have it set aside then. In fact, her subsequent actions in remarrying Talmadge twice indicate that she believed that the Arkansas divorce was valid and might have adverse legal consequences. Marie waited ten years before instituting any action to have the divorce set aside. Arkansas law does not permit a collateral attack. The 1974 Arkansas divorce decree was a final judgment, is entitled to full faith and credit in Louisiana, and is due the authority of the thing adjudged. C.C.P. 1842.
The separation agreement and property settlement and the renunciation of the community of acquets and gains are also binding. In Sheard v. Green, 219 La. 199, 52 So.2d 714, 716 (1951), a couple had entered into a separation agreement before the Arkansas court granted a divorce. The agreement was incorporated into the divorce. When the wife sought to have the agreement set aside, this court recognized that such an agreement would be null and void because it was entered into prior to a judicial separation or divorce in contravention of then Civil Code Articles 1790 and 2446. However, the court refused to set aside the agreement, holding that the only way such an agreement could be binding is to have it incorporated into the judgment of divorce or entered into subsequent to the dissolution of the marriage community. In the instant case, the divorce decree incorporated the separation agreement and the property settlement and the renunciation of the community of acquets and gains. Whether the husband and wife had the power to contract with each other when the agreements were executed, their incorporation into the divorce judgment renders them binding.
For the foregoing reasons, the judgments of the courts below are reversed and *494 there is now judgment recognizing the validity of the Arkansas divorce of July 23, 1974 and the renunciation of community dated April 4, 1974, all at the cost of the succession of Talmadge Bickham, Jr.
PER CURIAM
Rehearing denied. However, we reserve to Marie Bickham the right to litigate the effect of the "resolutory condition" in the "Separation Agreement and Property Settlement."
NOTES
[1] On June 23, 1983 the heirs petitioned for declaratory relief essentially alleging that certain bequests to Marie impinge on their legitime. An amended petition alleged that Talmadge and Marie were divorced in 1974. The heirs want a declaration that certain property named by Marie as community property was in fact, separate.