564 So.2d 374 (1990)
Dr. Robert F. AULT
v.
William C. BRADLEY, et al.
No. 89 CA 0963.
Court of Appeal of Louisiana, First Circuit.
June 26, 1990.
On Rehearing August 9, 1990.
*376 Dennis R. Whalen, Baton Rouge, for plaintiff-appellant Robert F. Ault.
Robert N. Ryan, New Orleans, for defendant-appellee William C. Bradley.
Before CARTER, SAVOIE and ALFORD, JJ.
CARTER, Judge.
The instant suit for damages arises out of a claim for legal malpractice.

FACTS
On February 9, 1979, two Louisiana corporations, Century Sounds (Century) and its marketing agent Worldwide Systems, Inc. (Worldwide), entered into a franchise agreement with Frank Lewis, a domiciliary of Florida. On December 17, 1979, Lewis filed suit in the Florida Circuit Court for damages arising out of the franchise agreement against Century, Worldwide, and Dr. Robert F. Ault, president of Worldwide. Default judgments were rendered against all three defendants, and, at the hearing on damages, Ault testified before the Florida court. On April 15, 1980, the Florida court rendered judgment in favor of Lewis and against Century, Worldwide, and Ault for $48,998.38.[1] Ault then retained the services of a Florida attorney to contest the Florida court judgment.
Thereafter, Lewis filed suit in Louisiana to make the foreign judgment executory. Ault retained William C. Bradley to represent him in the suit by Lewis. However, Bradley failed to file any pleadings on behalf of Ault, and on October 15, 1980, the trial court entered a default judgment in favor of Lewis and against Ault, Century, and Worldwide for $48,998.33 plus interest from date of judgment until paid plus all costs. Ault appealed the judgment, which was affirmed. Lewis v. Ault, 401 So.2d 1252 (La.App. 1st Cir.1981), writ denied, 409 So.2d 615 (La.1981).
On November 16, 1982, Ault filed the instant suit for breach of contract against Bradley. After trial, the trial judge rendered judgment in favor of Ault and against Bradley for $4,880.40, plus interest from date of judicial demand. From this adverse judgment, Ault appeals, assigning the following errors:
1. The trial court erred in dismissing plaintiff's demands, except interest, when Bradley failed to bear the burden of proof that he could not have blocked the punitive damages part of the Florida judgment in Louisiana on grounds of personal and subject matter jurisdiction.
2. The trial court erred in failing to award all damages to Ault, including all sums which he had been required to pay as attorney fees and damages.
Bradley answered the appeal, contending that the trial court erred in awarding Ault interest on the judgment.

MALPRACTICE
A claim for legal malpractice is stated when plaintiff alleges there was an attorney-client relationship, the attorney was guilty of negligence or professional impropriety in his relationship with the client, and this misconduct caused plaintiff some loss. Dier v. Hamilton, 501 So.2d 1059 (La.App. 2nd Cir.1987).
Once a prima facie case of malpractice has been made by plaintiff, the burden of proof shifts to defendant, and the attorney *377 bears the burden of proving that the litigation would have been unsuccessful. Jenkins v. St. Paul Fire & Marine Insurance Company, 422 So.2d 1109 (La.1982); Drury v. Fawer, 527 So.2d 423 (La.App. 4th Cir.1988); Dier v. Hamilton, supra.
In the instant case, Ault established that there was an attorney-client relationship between himself and Bradley. It is undisputed that Bradley failed to file any pleadings, and, as a result, a default judgment was rendered against Ault, which constituted negligence. Having determined Bradley was negligent, we must determine whether Ault sustained any loss.

FLORIDA COURT JUDGMENT
Ault contends that the Florida court did not have in personam jurisdiction or subject matter jurisdiction. Ault reasons that the Florida court did not have personal jurisdiction over him at the time the preliminary default was entered and that his personal appearance at the damage portion of the proceeding was insufficient to establish personal jurisdiction.[2] Ault further reasons that, even if this court upholds the Florida court's exercise of personal jurisdiction over him, the Florida court did not have subject matter jurisdiction and the award of punitive damages was improper.
LSA-R.S. 13:4241-4247, known as the Enforcement of Foreign Judgments Act, defines "foreign judgment" as "any judgment, decree, or order of a court of the United States ... which is entitled to full faith and credit in this state." LSA-R.S. 13:4241. LSA-R.S. 13:4242 further provides:
The foreign judgment shall be treated in the same manner as a judgment of a court of this state. It shall have the same effect and be subject to the same procedures, and defenses, for reopening, vacating, or staying as a judgment of a court of this state and may be enforced in the same manner.
Considering the definition of "foreign judgment," given in LSA-R.S. 13:4241, as a judgment that is entitled to full faith and credit in this state, the threshold inquiry in any proceeding under the Enforcement of Foreign Judgments Act is whether the judgment sought to be recognized is one that is entitled to full faith and credit.
A state may deny full faith and credit to a judgment rendered by a court of another state only when it is shown that the court which rendered the judgment lacked jurisdiction over the parties or the subject matter. U.S.C.A.Const. Art. 4, § 1; In Re Terry, 527 So.2d 448 (La.App. 5th Cir.1988); American Standard Leasing Company v. Plant Specialities, Inc., 427 So.2d 555 (La.App. 3rd Cir.1983). There is a general presumption that a court of a sister state had jurisdiction to render the judgment in the case before it, and it is incumbent upon the person attacking the judgment to show by clear and positive proof that the rendering court was without jurisdiction. In Re Terry, supra; American Standard Leasing Company v. Plant Specialities, Inc., supra.
In the instant case, the trial court determined that the Florida court had subject matter jurisdiction of the controversy between Lewis and Century, Worldwide, and Ault by virtue of Article V, Section 6 of the Florida Constitution and Florida statutes 26.012 and 34.01. In his written reasons for judgment, the trial judge noted that:
Article V, Section 6, paragraph 3 of the Florida Constitution provides in pertinent part:
The Circuit Court shall have exclusive original jurisdiction in all cases in equity except such equity jurisdictions as may be conferred on juvenile courts, and all cases at law not cognizable by subordinate courts....

*378 Florida statute 26.012 provides in pertinent part:
(2) They (Circuit Court) shall have exclusive original jurisdiction:
(a) in all actions at law not cognizable by the county court.
Florida statute 34.01, jurisdiction of the county courts, provides in pertinent part:
1. County courts shall have original jurisdiction:
(a) in all misdemeanor cases not cognizable by the circuit court;
(b) of all violations of municipal and county ordinances; and
(c) as to causes of action accruing:
(1) before July 1981, of all actions at law in which the matter in controversy does not exceed the sum of $2,500.00 exclusive of interest, costs, and attorneys fees, except those within the exclusive jurisdiction of the circuit courts.
(2) On or after July 1, 1980, of all actions at law in which the matter in controversy does not exceed the sum of $5,000.00, exclusive of interest, costs, and attorneys fees, except those within the exclusive jurisdiction of the circuit courts. All equitable defenses in the case properly before county court may be tried in the same proceeding.
The allegations made in Lewis's complaint provided that damages exceeded $2,500.00 and that "the misrepresentations and fraudulent acts complained of occurred in various places, including Hillsborough County, Florida." Clearly, the Florida Constitution and statutes give the Florida court subject matter jurisdiction over the controversy between Lewis and Century, Worldwide, and Ault.
Having determined that the Florida court had subject matter jurisdiction over the controversy, we must determine whether the Florida court had personal jurisdiction over Ault.
In Johnson v. Muelberger, 340 U.S. 581, 71 S.Ct. 474, 95 L.Ed. 552 (1951), the United States Supreme Court, quoting Sherrer v. Sherrer, 334 U.S. 343, 68 S.Ct. 1087, 92 L.Ed. 1429 (1948), interpreted the scope of the full faith and credit clause and enunciated a test for determining when full faith and credit must be accorded a decree as follows:
'[W]e believe that the decision of this Court in the Davis case and those in related situations are clearly indicative of the result to be reached here. Those cases stand for the proposition that the requirements of full faith and credit bar a defendant from collaterally attacking a... decree on jurisdictional grounds in the courts of a sister State where there has been participation by the defendant in the ... proceedings, where the defendant has been accorded full opportunity to contest the jurisdictional issues, and where the decree is not susceptible to such collateral attack in the courts of the State which rendered the decree.' (Emphasis added).
[71 S.Ct. at 477].
A defendant participates in a proceeding by entering an appearance. Johnson v. Muelberger, supra; Succession of Bickham, 518 So.2d 482 (La.1988). An appearance may consist of filing a plea, answer, or demurrer. LSA-C.C.P. art. 7; Succession of Bickham, supra. One may also appear by signing and filing an instrument entering one's appearance in a suit. Succession of Bickham, supra.
In the instant case, the record clearly reveals that after the default was entered against Ault in the Florida court, Ault attended the trial on the issue of damages, testified in the proceeding, and introduced evidence attempting to exonerate him from personal liability on any debt owed to Lewis.[3] After the Florida court rendered judgment and awarded damages, Ault retained the services of a Florida attorney in an attempt to defeat the judgment. The record reveals that Ault's attorney corresponded with the circuit judge and filed a "Motion for Relief from Judgment and for Setting Aside of Default," which was denied by the circuit judge. After thoroughly *379 reviewing the entire record, we find that Ault entered an appearance before the Florida court and, therefore, Ault cannot collaterally attack the decree in which he participated.
Ault further contends that the Florida court could not award punitive damages. Where a party contends that the law of a foreign state applies, but does not introduce or demonstrate what the law of that state is with respect to the relevant issues, it is presumed that the law of the foreign state is the same as the law of Florida. See Holden v. Holden, 374 So.2d 749 (La.App. 3rd Cir.1979). When Ault appeared in the Florida court proceeding, he did not introduce or demonstrate the relevant law in Louisiana; therefore, the Florida court presumed its law was the same as Louisiana law on the issue of punitive damages.
The trial court correctly determined that the Florida court judgment was entitled to full faith and credit by the State of Louisiana, including the punitive damage award, and any efforts to attack the foreign judgment in Louisiana would not have been successful.

DAMAGES
Ault contends that the trial court erred in failing to award him damages as prayed for, including attorney's fees.
Bradley contends that the trial court erred in awarding Ault damages of $4,880.40. Bradley reasons that Louisiana could not award interest on the Florida court judgment because the Florida court judgment was silent as to post-judgment interest. As such, the trial court judgment, making the Florida court judgment executory and awarding $4,880.40 as post-judgment interest, was improper and could have been reversed on appeal. Bradley reasons that since he was dismissed immediately after the default on the suit to make the Florida court judgment executory was confirmed, and he did not represent Ault on appeal, the trial court erred in awarding Ault damages of $4,880.40 in the suit for legal malpractice.
When the attorney's performance falls below the standard of competence and expertise usually exercised by other attorneys in handling such matters, the attorney is liable for any damage to the client caused by his substandard performance. Gill v. DiFatta, 364 So.2d 1352 (La.App. 4th Cir.1978). The proper method of determining whether an attorney's malpractice is a cause in fact of damage to his client is whether the performance of that act would have prevented the damage. Gill v. DiFatta, supra. See Speedee Oil Change No. 2, Inc. v. National Union Fire Insurance Company, 444 So.2d 1304 (La.App. 4th Cir. 1984); Jenkins v. St. Paul Fire & Marine Insurance Company, 393 So.2d 851 (La. App. 2nd Cir.1981), affirmed, 422 So.2d 1109 (La.1982).
In the instant case, having determined that the Florida court judgment, awarding punitive damages, is entitled to full faith and credit, we find that the trial court correctly refused to award Ault damages for the amount of the Florida court judgment.
In the instant case, if Bradley had answered the suit to make the Florida court judgment executory and raised the issue of interest in his answer, the judgment of $4,880.40 would not have been rendered against Ault. See Williams v. Petroleum Helicopters, Inc., 234 So.2d 522 (La.App. 3rd Cir.1970), writ denied, 256 La. 371, 236 So.2d 501 (1970). Therefore, we find that Bradley's failure to answer the petition and raise the issue of post-judgment interest on the suit to make the Florida court judgment executory is a cause in fact of the damage, and the trial court properly awarded Ault damages in this amount.
Although Ault contends that the trial court erred in not awarding attorney's fees, no authority was cited in support of this contention, and we are aware of none. With certain exceptions, attorney's fees are not recoverable as an item of damage except where authorized by statute or contract. See Quealy v. Paine, Webber, Jackson & Curtis, Inc., 475 So.2d 756 (La.1985). See also Huddleston v. Bossier Bank & Trust Company, 475 So.2d 1082 (La.1985). *380 Therefore, the trial court properly denied Ault's claim for attorney's fees.

CONCLUSION
For the above reasons, the judgment of the trial court in favor of Ault and against Bradley for $4,880.40, plus interest and costs, is affirmed. Costs of this appeal are assessed against Bradley and Ault equally.
AFFIRMED.

ON APPLICATION FOR REHEARING
Rehearing GRANTED.
It has been called to our attention in an application for rehearing that, in reviewing the damage award, we failed to increase the total damage award to include the amount of attorney's fees Ault paid Bradley to represent him.
As we noted on original hearing, the attorney's fees Ault incurred to prosecute the action for legal malpractice against Bradley are not a recoverable item of damage. However, the fees Ault paid Bradley to defend the suit to make the foreign judgment executory, which Bradley failed to do, are recoverable.
In the instant case, Ault and Bradley testified that Ault gave Bradley $1,000.00 in attorney's fees.
Accordingly, we amend the trial court judgment to award Ault an additional $1,000.00 in damages and affirm the judgment in all other respects.
NOTES
[1] The Florida court judgment itemized damages as follows:

(1) compensatory damages $ 12,847.00;
(2) punitive damages $ 35,153.00;
(3) interest $ 933.33; and
(4) costs $ 65.00

The Florida court did not award post-judgment interest.
[2] At trial, Ault and Bradley stipulated that Ault's appearance in the Florida court proceeding rendered in personam jurisdiction for all portions of the Florida court judgment, except for punitive damages. Therefore, the only portion of the judgment for which Ault seeks recovery from Bradley is the punitive damage award by the Florida court and the interest accrued on that award, which was stipulated to be $4,880.40, and awarded by the Louisiana court in the suit to make the foreign judgment executory.
[3] Ault introduced evidence that he had resigned as president of Worldwide.