598 So.2d 379 (1992)
James H. JEFFRIES
v.
The ESTATE OF Byron L. PRUITT, et al.
Clarice Nichols PRUITT, et al.
v.
SUCCESSION OF Patsy W. JEFFRIES, et al.
Nos. 90 CA 2233, 90 CA 2234.
Court of Appeal of Louisiana, First Circuit.
March 6, 1992.
Rehearing Denied June 2, 1992.
Writ Denied May 15, 1992.
*381 Ron S. Macaluso, Hammond, for defendants/appellants State Farm, Pruitt Estate.
Iddo Pittman, Jr., Hammond, for defendants/appellants Clarice N. Pruitt, J.P. Doolittle and Estate of B.L. Pruitt.
Robert P. Hogan, Covington, for plaintiffs/appellees J.H. Jeffries, Estate of Patsy Jeffries.
Thomas A. Lane, Baton Rouge, for defendants J.H. Jeffries, State Farm.
Burt K. Carnahan, Metairie, for State Farm.
Gary P. Koederitz, Baton Rouge, for James H. Jeffries.
Before WATKINS, CARTER and FOIL, JJ.
WATKINS, Judge.
These consolidated wrongful death suits arose out of a head-on automobile collision. The collision occurred June 13, 1984, on Louisiana Highway 1077 at approximately 4:00 p.m. Mr. Byron Pruitt was proceeding in a northerly direction in his pickup truck and Mrs. Patsy W. Jeffries was driving in a southerly direction in her four-door sedan. For reasons that were not apparent, the vehicles collided head on instantly killing both drivers who were the only occupants of the two vehicles. The surviving spouses, Mr. James H. Jeffries and Mrs. Clarice Nichols Pruitt, filed individual suits for wrongful death which were later consolidated for trial. Mr. Jeffries filed suit against the Estate of Byron Pruitt and State Farm Mutual Insurance Companies, in its capacity as Mr. Pruitt's liability insurer and in its capacity as Mrs. Jeffries' uninsured motorist carrier. Mrs. Clarice Pruitt and the decedent's daughter, Genece Pruitt Doolittle, filed suit against James J. Jeffries individually and as Administrator of the Succession of Patsy W. Jeffries, and State Farm Mutual Insurance Company, the liability insurer of Mr. Jeffries.
After trial, the jury determined that the accident resulted solely from the negligence of Mr. Pruitt and awarded Mr. Jeffries $81,782.02 in damages. Judgment was signed by Judge Remy Chaisson on August 3, 1990.[1] On August 9, 1990, Mrs. Clarice Nichols Pruitt, individually and as the Administratrix of the Succession of Byron L. Pruitt, and Genece Pruitt Doolittle filed a motion for judgment notwithstanding the verdict and, in the alternative, for a new trial. A similar motion was filed by the Estate of Byron L. Pruitt[2] and State Farm. The motions were denied by Judge Fendlason.[3]
Individual appeals were filed by the defendants. Mrs. Pruitt and Mrs. Doolittle appeal alleging that:
(1) the jury erred in finding that Mr. Pruitt was solely at fault in causing the collision;
(2) the trial court erred in denying the motion for judgment notwithstanding the verdict; and
(3) the trial court erred in rendering judgment against the Estate of Byron Pruitt because the Administrator of the Estate was never made a party to the suit.
State Farm appealed, alleging that:
1) the jury erred in finding Mr. Pruitt at fault;
2) the trial court erred in refusing to allow State Farm to amend its answer on the day of trial; and
3) the trial court erred in refusing to hear State Farm's exception of no right of action.
*382 Mr. Jeffries answered the appeals requesting an increase in the damage award.

ACCIDENT
There were no witnesses to the accident. Consequently, the evidence presented during the trial of this matter consisted of the testimony of persons who arrived at the scene of the accident shortly after the accident occurred, the testimony of the state trooper who investigated the accident, photographs of the accident scene, and the testimony of three accident reconstruction experts.
Mr. Jeffries presented two accident reconstruction experts, Mr. Andrew J. McPhate and Mr. John Rigol, who testified that they believed, without question, that the accident occurred in Mrs. Jeffries' lane of travel. These experts based their opinions on the location of the vehicles after the accident, the damage to the vehicles, and the debris and scarring left on the highway. The experts explained to the jury in great detail the reasoning behind their opinions that the accident occurred in Mrs. Jeffries' lane of travel and why it could not have occurred in Mr. Pruitt's lane of travel. In contrast, Mrs. Pruitt's expert, Mr. Earle Boudreaux, testified that he believed that the accident occurred in Mr. Pruitt's lane of travel. Although he based his opinion on the same physical evidence, he disregarded the markings on the roadway as being unreliable.[4] Because there were no witnesses to this tragic accident, the determination of liability rests heavily on the testimony of the accident reconstruction experts.
A finding as to credibility and reliability of testimony by an expert is a question of fact for the jury to determine and will not be overturned on appeal unless manifestly erroneous and without reasonable basis. Anthony v. Hospital Service Dist. No. 1, 477 So.2d 1180, 1184 (La.App. 1st Cir.1985), writs denied, 480 So.2d 743 (La.1986); King v. Taylor, 428 So.2d 897 (La.App. 1st Cir.1983). We have thoroughly reviewed the record in this matter and cannot say that the jury was manifestly erroneous in its decision regarding liability.

JNOV
Appellants, Mrs. Pruitt and Mrs. Doolittle, also contend that the trial court erred in denying their motion for judgment notwithstanding the verdict. The motion for JNOV was requested on the grounds that the jury verdict was contrary to the law and the evidence. Specifically, the appellants contended that the jury did not adequately weigh the evidence and apply the law; that it relied blindly upon the unsupported testimony of the experts submitted by Mr. Jeffries. The appellants now argue that, because the judge who heard the motion for the JNOV was not the same judge who heard the case, they are entitled to a trial de novo under the provisions of LSA-R.S. 13:4209 which provides:
In all cases where cases are heard and taken under advisement of the district judge or judges of the city courts, if the judge before whom a case is tried should die, resign, or be removed from office, or should his term expire before rendering his judgment in the case, his successor in office shall decide the case from the evidence in the record, if all of the testimony is in writing, but if it should be a case in which the testimony has not been reduced to writing, the succeeding judge shall decide the case from a statement of the facts, if one be found in the record, or if the parties to the suit agree upon a statement of facts, and if the testimony be not in the record, and there be no statement of facts, the case shall be tried de novo.
Clearly LSA-R.S. 13:4209 pertains to cases in which a definitive decision was never reached by the presiding judge or jury and the successor judge must render a decision. In the instant case the jury rendered a verdict which was signed by the *383 presiding judge. Under these circumstances we do not believe the provisions of LSA-R.S. 13:4209 apply.
We are further convinced from a review of the record in this matter that the motions for JNOV and for a new trial were properly denied. We find no merit in this assignment of error.

SUCCESSION REPRESENTATIVE PROPER PARTY DEFENDANT
On appeal, Mrs. Pruitt alleges that the judgment against "The Estate of Byron L. Pruitt" is null and void because Mr. Jeffries failed to name as a defendant the duly appointed succession representative. Mrs. Pruitt urges that the proper party defendant in an action to enforce an obligation of the deceased or of his succession is the succession representative appointed by a court of this state. We agree.
Mr. Jeffries filed suit against the Estate of Byron Pruitt and State Farm. Although the record contained no motion to enroll as counsel for the estate or the succession representative, service for the Estate was made upon attorney Joe Simpson. Mr. Simpson filed an answer, on December 4, 1984, containing a general denial, on behalf of the Estate. On January 8, 1985, Mr. Simpson filed on behalf of Mrs. Pruitt, as administratrix of the Estate of Byron L. Pruitt, a motion to quash a subpoena duces tecum.
On June 13, 1985, a motion to enroll as counsel was filed stating that "Joe Simpson, who has been counsel for Mrs. Clarice Nichols Pruitt" desired to withdraw and that Iddo Pittman, Jr. desired to be added as counsel of record for Mrs. Clarice Nichols Pruitt. Thereafter, on June 27, 1985, Mrs. Pruitt and Genece Pruitt Doolittle filed a motion to consolidate the suits. On July 22, 1985, interrogatories were filed on Mrs. Pruitt's behalf and on April 22, 1987, Mrs. Pruitt and Genece Pruitt Doolittle filed an opposition to the motion for partial summary judgment. On August 9, 1990, Mrs. Pruitt, individually and as the administratrix of the Succession of Byron L. Pruitt, and Genece Pruitt Doolittle moved for a judgment notwithstanding the verdict and in the alternative for a new trial.
The following articles of the Louisiana Code of Civil Procedure, in effect at the time of this suit, set forth the pertinent law with regard to the proper party defendant in a suit filed against a succession.
LSA-C.C.P. Article 734 provides in pertinent part:
The succession representative appointed by a court of this state is the proper defendant in an action to enforce an obligation of the deceased or of his succession, while the latter is under administration.
LSA-C.C.P. Article 3249 provides:
The succession representative shall defend all actions brought against him to enforce claims against the succession, and in doing so may exercise all procedural rights available to a litigant.
As the proper party defendant the succession representative is entitled to service of process. LSA-C.C.P. art. 1201. Unless the succession representative makes a general appearance waiving all objections to the lack of jurisdiction of the court, a judgment rendered against the succession representative who has not been served with process as required by law shall be annulled. LSA-C.C.P. art. 2002.
Accordingly, the issues presented in the instant case are whether the succession representative was made a party to this suit and, if not, whether the representative made a general appearance waiving any defects in citation or jurisdictional requirements.
In the recent case of State through DOTD v. Estate of Davis, 572 So.2d 39 (La.1990), the State initiated an expropriation proceeding against the Estate of Giles Davis and petitioned the court to appoint an attorney at law to represent the estate. The State claimed that it properly sued the owner of the property through the appointed attorney but the court disagreed, stating:
The proper party defendant in a suit against a succession is a succession representative. La.Code Civ.P. art. 734. A *384 "succession representative" includes an administrator, provisional administrator, administrator of a vacant succession, executor, and dative testamentary executor. La.Code Civ.P. art. 2826(2). The suit by the Department against the Estate of Giles Davis was in effect a suit against the succession; therefore, the proper party defendant was not an attorney at law appointed by the court to represent the Estate, but a succession representative. La.Code Civ.P. art. 734; Holland v. Unopened Succession of Holland, 562 So.2d 1022 (La.App. 3d Cir.), writ denied, 566 So.2d 399 (La. 1990). Thus, it was the Department's duty to determine whether or not the succession of Giles Davis had been opened and whether there was in existence a succession representative and, if not, to initiate proceedings to open the succession and have the proper succession representative appointed and subsequently named as the defendant in the expropriation suit....
... Because the succession was not properly represented as a party defendant, it was not protected against the actions of the attorney purporting to represent the succession.... (Footnotes omitted) (emphasis added).
572 So.2d at 42-43.
According to the ruling in Davis, a succession representative is not made a party to a suit when only the estate is named in the pleadings and service is made upon an attorney who is not the duly qualified succession representative. See also Interstate Collection Bureau v. Olivier, 457 So.2d 688 (La.App. 4th Cir.1984), wherein service upon a selected succession representative was held to be invalid because service was made before the representative was duly qualified. In the instant case the succession representative was never made a party to this action, nor was service made upon the representative as required by law.
Mrs. Pruitt did not specifically waive citation and service by filing a written waiver into the record pursuant to LSA-C.C.P. art. 1201. Therefore we must determine whether service upon Mr. Simpson, rather than on Mrs. Pruitt individually, constituted valid service on Mrs. Pruitt. We find that it did not.
LSA-C.C.P. art. 1235 provides that, "[s]ervice is made on a person who is represented by another by appointment of court, operation of law, or mandate, through personal or domiciliary service on such representative." The record in this matter does not establish that Mr. Simpson was the legal representative of Mrs. Pruitt at the time he was served with the plaintiff's petition. Consequently, the service of the petition was invalid as to Mrs. Pruitt as succession representative.[5]Crane Supply Company v. Drake & Planche, Inc., 255 So.2d 188 (La.App. 4th Cir.1971).
Notwithstanding plaintiffs' failure to properly name and serve the succession representative, we must now determine whether the pleadings filed on behalf of Mrs. Pruitt constituted a general appearance which waived these defects.
The provisions of LSA-C.C.P art. 7, state that:
Except as otherwise provided in this Article, a party[6] makes a general appearance which subjects him to the jurisdiction of the court and impliedly waives all objections thereto when, either personally or through counsel, he seeks therein any relief other than:
(1) Entry or removal of the name of an attorney as counsel of record;

*385 (2) Extension of time within which to plead;
(3) Security for costs;
(4) Dissolution of an attachment issued on the ground of the nonresidence of the defendant; or
(5) Dismissal of the action on the ground that the court has no jurisdiction over the defendant.
Attorney Joe Simpson filed on behalf of Mrs. Pruitt, in her capacity as succession representative, a motion to quash a subpoena duces tecum. Mr. Iddo Pittman,[7] as substituted counsel, filed a motion for JNOV and alternatively for a new trial on behalf of Mrs. Pruitt in her capacity as succession representative. Pursuant to LSA C.C.P. art. 7 these pleadings were sufficient to constitute a general appearance, making Mrs. Pruitt subject to the court's jurisdiction, and impliedly waiving all objections to the exercise of the court's jurisdiction.[8] See Socorro v. City of New Orleans, 579 So.2d 931 (La.1991), wherein the court concluded that although defendant, City's, liability insurer Angelina Casualty Company, was incorrectly named in the plaintiff's petition it was capable of making a general appearance by filing a motion for summary judgment. See also Crane Supply Company v. Drake & Planche, Inc., 255 So.2d 188 (La.App. 4th Cir.1971), wherein a corporate officer who was named as a defendant waived objection to invalid service upon the corporate attorney,[9] by making a general appearance through the same attorney whom the court concluded was acting under mandate from the corporate officer when he filed an answer to the amended petition on behalf of the corporate officer. Accordingly, we conclude that pleadings filed by the succession representative and her participation in this litigation were sufficient to constitute a general appearance.

AMENDED ANSWER
State Farm in its capacity as insurer of Mr. Pruitt answered the original petition of Mr. James Jeffries with a general denial filed on December 21, 1984. On the second day of trial, State Farm attempted to file, on behalf of the Estate of Byron L. Pruitt, an answer to Mr. Jeffries' first supplemental and amending petition of April 4, 1986. In the answer which the trial court refused to allow, State Farm pled several affirmative defenses, including a claim to set off against any judgment in favor of Mr. Jeffries the amounts which State Farm had previously paid to him in its capacity as Mr. Jeffries' UM carrier.
The trial court was correct in rejecting State Farm's proposal to answer on behalf of the estate. Plaintiff's amended petition stated claims against State Farm, not new claims against the estate.[10] Consequently, the answer which State Farm attempted to file during trial, although styled as being on behalf of the estate and being in response to the amended claims, was actually an amendment to State Farm's original 1984 answer which contained only general denials. Whether or not State Farm's amended answer would be allowed was a matter within the trial court's discretion.
*386 LSA-C.C.P. art. 1151 provides in pertinent part:
A defendant may amend his answer once without leave of court at any time within ten days after it has been served. Otherwise, the petition and answer may be amended only by leave of court or by written consent of the adverse party.
The general rule regarding amendments after an answer is filed is that the trial judge has much discretion in such matters and his ruling will not be disturbed except where a manifest abuse of discretion has occurred and indicates a possibility of resulting injustice. First Guar. Bank v. Pineywood Partnership, 569 So.2d 209, 213 (La.App. 1st Cir. 1990).
In the instant suit State Farm's request to file an amended answer came on the eve of trial and raised new affirmative defenses of which plaintiff had no prior notice. We find no abuse of discretion by the trial court.

NO RIGHT OF ACTION
State Farm also contends that the trial court erred in dismissing its exception of no right of action. State Farm's exception claimed that the plaintiff did not have a right to proceed with his claims because his marriage to the deceased was a nullity. State Farm contends that a previous divorce obtained in Arkansas between the plaintiff and his second wife, Emily [French], was null and void because plaintiff failed to comply with the Arkansas residency requirements prior to obtaining the divorce and thus the court was without jurisdiction.
The evidence proffered by State Farm establishes that Emily French and James Jeffries were divorced in the Chancery Court of Craighead County, Arkansas, on April 11, 1977. The decree of divorce provides that the plaintiff, Emily French Jeffries, was a resident of the State of Louisiana and that the defendant, James Jeffries, had been a resident of Arkansas for more than three months. The decree further states that a waiver of service and entry of appearance were filed by the defendant, James Jeffries. State Farm also proffered the affidavits of defendant's third wife, Jackie Vaughn Jeffries Reynolds, and of a former co-employee, Fred Coombs. The uncontradicted affidavits establish that James Jeffries was a resident of Louisiana from July 1975 through July 1977.
The United States Constitution provides that `[f]ull Faith and Credit shall be given in each State to the public Acts, Records and judicial proceedings of every other State.' U.S. Constitution, Article IV, § 1. The United States Supreme Court, in interpreting the scope of that clause as it relates to divorce proceedings, has enunciated a test for determining when full faith and credit must be accorded a divorce decree.
`... We believe that the decision of this Court in the Davis case and those in related situations are clearly indicative of the result to be reached here. Those cases stand for the proposition that the requirements of full faith and credit bar a defendant from collaterally attacking a divorce decree on jurisdictional grounds in the courts of a sister State where there has been participation by the defendant in the divorce proceedings, where the defendant has been accorded full opportunity to contest the jurisdictional issues, and where the decree is not susceptible to such collateral attack in the courts of the State which rendered the decree.' ... Johnson v. Muelberger, 340 U.S. 581, 71 S.Ct. 474, 477, 95 L.Ed. 552 (1951), quoting Sherrer v. Sherrer, 334 U.S. 343, 351-52, 68 S.Ct. 1087, 1090-91, 92 L.Ed. 1429 (1948). (Emphasis in original).
Succession of Bickham, 518 So.2d 482, 492 (La.1988)
It is clear that James Jeffries participated in the divorce proceedings and was accorded a full opportunity to contest the jurisdiction of the court. Furthermore, under Arkansas law, the divorce is not susceptible to collateral attack. Smith v. Smith, 272 Ark. 199, 612 S.W.2d 736 (1981); Succession of Bickham, 518 So.2d 482, 493 (La.1988). Accordingly, we find *387 no merit in State Farm's exception of no right of action.

QUANTUM
Finally, we address Mr. Jeffries' claim that the jury abused its discretion in awarding inadequate damages. The assessment of damages is within the province of the trier of fact, whose judgment is allowed great discretion and deference. An appellate court may disturb a jury award only if it finds an abuse of the jury's discretion. When disturbing an award made in the lower court, an appellate court is limited to lowering excessive awards to the highest amount the trial court could have reasonably awarded or raising inadequate awards to the lowest amount the trial court could have reasonably awarded. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
In the instant case the jury awarded Mr. Jeffries $40,000.00 for loss of support, $30,000.00 for loss of love and affection, and $11,782.02 for funeral expenses.
At the time of her death Patsy Jeffries was 27 years old. She had been married to James Jeffries for two years and had lived with him for over a year prior to their marriage. Patsy had one child from a previous marriage who lived with his mother until the date of her death and has since resided with his father. Patsy's mother, Patsy Ann Wiggins, testified that Patsy and Mr. Jeffries were very close and loved each other very much. She stated that after Patsy's death Mr. Jeffries was heartbroken. Mrs. Wiggins also testified that Mr. Jeffries lived with another woman approximately a year after Patsy's death and subsequently married another woman whom he divorced approximately six months later. Mr. Jeffries testified that he and Patsy had a close relationship, that he loved her very much, and that he was devastated when she died.
Although we find that the award of $30,000.00 for loss of love and affection is at the low end of the reasonable range of awards, we do not find it to be an abuse of the broad discretion accorded the jury considering the particular facts of this case. See Arnold v. Illinois Cent. Gulf R.R., 501 So.2d 778 (La.App. 1st Cir.1986), writ denied, 503 So.2d 479 (La.1987); Thompson v. PetroUnited Terminals, Inc., 536 So.2d 504 (La.App. 1st Cir.1988), writs denied, 537 So.2d 212, 213 (La. 1989).

LOSS OF SUPPORT
Damages for loss of support are to some extent speculative in nature and cannot be calculated with mathematical certainty. In making such awards the jury must exercise sound discretion and award an amount which, considering all the circumstances, seems just to both parties and is not unduly oppressive to either. Blanchard v. Rodrigue, 340 So.2d 1001 (La.App. 1st Cir.1976), writs denied, 341 So.2d 1129, 1130 (La.1977).
Factors which should be weighed in determining the amount due for loss of support include the decedent's present earnings, his age and life expectancy, his work-life expectancy, the possibility of a decrease or increase in his earnings, the decedent's job security, the nature of decedent's work, his health, his relationship with his family, his personal expenses and his past work record. Other factors are the surviving spouse's age and health, the minor children's age, and the effects of inflation and the need to discount future earnings to a present day amount. In short, all factors relevant to a determination of the amount of the loss of support due to the premature demise of the decedent should be considered.
Blanchard, 340 So.2d at 1005.
To establish the amount of lost support, the plaintiff called Dr. William P. Culbertson, an expert economist. Dr. Culbertson calculated two different amounts for lost support. One amount was based upon the earnings Patsy made during the years 1982 and 1983,[11] which averaged $13,882.00 per year, and the second amount *388 was based upon the earnings she would have received from a new job at Gulf South Laboratories, which was offered to her two weeks after her death.[12] Dr. Culbertson determined the present value of the past and future loss of support, using a work-life expectancy of 17.8 years, an anticipated wage increase of 6% per year, and a discount rate of 8½%. From this amount he deducted approximately 19% for personal expenses which included $25.00 per week in child support for Patsy's son.[13] These figures were based upon the amounts which Mr. Jeffries estimated Patsy spent on herself and the amounts which Patsy spent on child care for her son. On cross examination Dr. Culbertson admitted that the amount Mr. Jeffries estimated for child care expenses was 50% less than the amount that Patsy claimed on her child care credit for income taxes purposes. Dr. Culbertson also admitted that Patsy's personal expenses could be higher and that he did not attempt to factually substantiate the estimates that Mr. Jeffries gave him.
Based on the personal expenses estimated by Mr. Jeffries, including the additional 50% in child care costs, Dr. Culbertson estimated the amount of lost support to be $168,000.00 based upon her 1982-83 earnings, and $305,000.00 based upon the promised annual wage of $20,700.00 from Gulf South Laboratories.
The evidence also revealed that Patsy's work history began when she was eighteen. Patsy maintained regular employment except for four years when she remained at home to raise her son. Approximately three months before her death Patsy was laid off from her job because of the business's closing.
In view of the broad discretion accorded the jury in the award of damages, and considering all the factors for determining loss of support, we do not find the amount awarded by the jury to be manifestly erroneous. Based upon the questionable amounts for the personal expenses of Patsy, and the fact that Mr. Jeffries will no longer provide support for Patsy's son, we believe that the jury could have reasonably concluded that the amount of lost support would be $40,000.00.
For the foregoing reasons, the judgment of the trial court is affirmed in all respects. Costs to be paid by appellants, in equal amounts.
AFFIRMED.
NOTES
[1] The Honorable Retired Judge Remy Chaisson was appointed pro tempore to serve as judge of Division F of the Twenty-Second Judicial District Court of Louisiana, which appointment terminated on August 1, 1990, subject to the completion of any unfinished business. Judge Chaisson conducted the trial of this matter that began on April 30, 1990, and concluded on May 3, 1990.
[2] All the pleadings filed by State Farm included the Estate of Byron L. Pruitt as co-defendant. Hereinafter we will refer to these defendants jointly as State Farm.
[3] The Honorable Judge Fendlason was appointed pro tempore to serve as Judge of Division F of the Twenty-Second Judicial District Court on August 8, 1990, which term was to expire on October 31, 1990.
[4] Mr. Boudreaux testified that he did not rely on the location of the debris on the roadway because he felt that there was a possibility that the debris had been moved when the firemen sprayed Mr. Pruitt's truck that had caught fire. He also refused to consider two gouge marks in the roadway because he considered their relation to the accident speculative.
[5] At this point we also note that the record does not establish the date that Mrs. Pruitt was qualified as the succession representative. In this regard we note that service on a succession representative, before he or she is duly qualified, is invalid. Interstate Collection Bureau v. Olivier, 457 So.2d 688 (La.App. 4th Cir.1984).
[6] Although Article 7 provides that it is a party that may make a general appearance the Louisiana Supreme Court in Socorro v. City of New Orleans, 579 So.2d 931 (La.1991), has recently determined that this term should not be read strictly and that unnamed parties may also subject themselves to the jurisdiction of the court through pleadings sufficient to constitute a general appearance.
[7] Due to the consolidation of the wrongful death suits Mr. Pittman filed many other pleadings on Mrs. Pruitt's behalf however these pleadings were filed in Mrs. Pruitt's individual capacity and not in her capacity as succession representative.
[8] LSA-C.C.P. art. 925 provides that "[w]hen a defendant makes an appearance, all objections which may be raised through the declinatory exception, except the court's lack of jurisdiction over the subject matter of the action, are waived unless pleaded therein."
[9] The corporate attorney accepted personal service on behalf of the two corporate officers who were standing next to him when he received the service. The court concluded that at that point in time the attorney was not the legal representative of one of the corporate officers and consequently the service was invalid.
[10] Plaintiff, Mr. Jeffries, filed an amended petition on April 4, 1986, setting forth claims against State Farm for unfair and deceptive insurance claims and settlement practices, as well as for bad faith settlement with plaintiff's stepson. Additional damages were claimed for the alleged bad faith actions of State Farm. State Farm in its capacity as insurer for Mr. Pruitt filed an answer to this petition on July 27, 1987, and those claims were subsequently severed from the main demand.
[11] Although Patsy earned substantially less income in previous jobs, Dr. Culbertson did not consider those figures as he believed the more recent figures would more accurately reflect her lost wages.
[12] Patsy Jeffries interviewed for a secretarial position with Gulf South Laboratories several months before her death and had told Mr. Jeffries that if the position were offered to her she would have accepted it. Mr. Edward Cronick, the president of Gulf South Laboratories, testified at trial that he called for Patsy several weeks after her death to offer her the job at a salary of $19,200.00 and an annual bonus of $1,500.00.
[13] Dr. Culbertson stated that his calculation of Patsy's personal expenses did not include the amounts, except child care, which would have been spent on her son.