NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

19-240

ERIC ANTOINE

VERSUS

GEORGE K. ANDING, JR., ET AL.

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 125803-H
HONORABLE LORI A. LANDRY, DISTRICT JUDGE

**********

CANDYCE G. PERRET
JUDGE

**********

Court composed of Shannon J. Gremillion, Candyce G. Perret, and Jonathan W. Perry, Judges.

AFFIRMED.

**J. Lomax Jordan, Jr.**
**1817 W. University Avenue**
**Lafayette, LA   70506**
**(337) 233-9984**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Eric Antoine**

**James H. Gibson**
**Stacy N. Kennedy**
**Gibson Law Partners**
**Post Office Box 52124**
**Lafayette, LA   70505**
**(337) 761-6023**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Charest D. Thibaut, III**
    **George K. Anding, Jr.**
    **Rainer, Anding, Talbot & Mulhearn**
    **Charest D. Thibaut, III, LLC**

**Christopher J. Washington**
**Daniels and Washington Law Firm**
**38167 Post Office Road**
**Prarieville, LA   70769**
**(225) 383-3800**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Christopher J. Washington**
    **Daniels and Washington Law Firm**

**PERRET, Judge.**

Plaintiff, Eric Antoine, appeals a trial court judgment that sustained a peremptory exception of no right of action and dismissed his suit against Defendants, George K. Anding, Jr., Rainer, Anding, Talbot & Mulhearn, Daniels & Washington, LLC, Christopher Washington, Charest D. Thibaut, III, and Charest D. Thibaut, III, LLC (collectively referred to as "Defendants"). For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY:**

On June 24, 2011, Eric Antoine's mother, Myrtle Mouton, died following inpatient care she received with Dr. Kevin C. Dupke while at Dauterive Hospital and Nexion Health at New Iberia South d/b/a/ New Iberia Manor South. Thereafter, in October 2011, Eric and his brother, Ira Edward Antoine, Jr. ("Ira Edward"), sought the legal services of attorneys Christopher Washington, George K. Anding, Jr., and Charest D. Thibaut, III, to pursue claims arising out of their mother's death. On October 11, 2011, the Antoines signed a contract of employment with Defendants, which stated in pertinent part:

> [A]ppearer [the Antoines] [do] hereby retain and employ the attorneys to institute, prosecute and/or settle all claims on his [the Anotines] behalf, including claims for medical malpractice, personal injuries, loss of consortium, costs, expenses and all other losses . . . .
>
> . . . .
>
> If, after reasonable investigation of this claim, and prior to the filing of any pleadings, the attorneys determine that it is not feasible to prosecute such claim or claims, the attorneys may withdraw from representation under this agreement upon written notice to appearer, allowing appearer a reasonable time to engage the services of another attorney or law firm prior to the expiration of any prescriptive or preemptive period applicable to such claim or claims. Upon such withdrawal, appearer shall be responsible only for the payment of out-of-pocket expenses . . . directly incurred by the attorneys in the investigation of such claim or claims. In such event, and upon payment of such expenses, the attorney will deliver to appearer a copy

of any and all statements, reports and other investigational materials gathered by the attorneys in the investigation of such claim or claims.

Following the filing of pleadings by the attorneys, either party may withdraw from this agreement at will, upon notice thereof to the other in writing. Upon any such withdrawal, appearer shall be responsible for the payment of out-of-pocket expenses (as referred to above) directly incurred by the attorneys in the investigation of such claim or claims. Upon payment of other expenses, the attorneys will deliver to appearer a copy of any and all statements, reports and investigational materials gathered by such firm in the investigation of such claim or claims. If appearer withdraws from this agreement, or otherwise discharges or dismisses the attorneys without cause, appearer shall be liable for and shall pay the attorneys a professional fee, apportioned against appearer's highest agreed upon contingent fee in connection with such claim or claims, in an amount determined by comparing the respective services and contributions of the attorneys involved for work performed and other relevant factors, and applying a percentage so determined as applicable to the attorneys against the amount of monetary recovery as to such claim or claims.

On February 28, 2012, Defendants filed a complaint on behalf of the Antoines to initiate the medical review panel process of their claim on behalf of their deceased mother. Thereafter, on May 1, 2014, the Medical Review Panel issued a unanimous opinion that found no breach in the standard of care by any of Ms. Mouton's health care providers.

On May 19, 2014, Defendants sent, by certified mail, the following correspondence to the Antoines:

Dear Friends:

The Medical Review Panel in this matter has completed its deliberations, and we have enclosed a copy of their written opinion, which was received by us on May 14, 2014. As you will note, the panelists were of the unanimous opinion (for the detailed written reasons included in their opinion) that the evidence submitted did not support the conclusion that any of the three defendants (the hospital, the physician or the nursing home) breached any applicable standard of care in their treatment of your mother.

As you may recall, one of the nursing consultants we retained to review the records arrived at a similar opinion, and so we could not utilize her services in this case. Despite the favorable opinion of our other expert nursing consultant, we do not feel that we would be able

2

to overcome the opinion of these panelists at trial, and have decided not to go forward with filing a suit and further pursuing the claim.

Please understand that this is only our opinion and decision, and you are certainly free to consult with other attorneys if you so desire. Under the provisions of the Medical Malpractice Act, you have 90 days from our receipt of the opinion of the Medical Review Panel, or until August 12, 2014, to file suit in this matter if you desire to continue pursuit of the claim. A suit filed after August 12, 2014, may be dismissed due to the applicable statute of limitations. Accordingly, if you desire to consult other attorneys, you should do so as soon as possible, so that those attorneys will have adequate opportunity to investigate the matter (and file suit, if such is their and your decision) prior to August 12, 2014.

We have also enclosed copies of all records we obtained, our submission to the Medical Review Panel, and the submissions of the defendants with the correspondence to Eric, for your use in consulting other attorneys, if you so desire. We will be happy to discuss the matter with those attorneys, if you would like us to.

As our investigation and pursuit of this matter has thus concluded, we are closing our respective files. Thank you for the opportunity to be of service to your family, and feel free to call if you have questions.

On February 24, 2015, Eric Antoine ("Mr. Antoine") filed a petition for damages against Defendants alleging professional negligence in allowing the underlying medical malpractice action to prescribe. In response, Defendants filed a peremptory exception of no right of action arguing that Mr. Antoine "lacks a right of action to proceed in this matter insofar as any attorney-client relationship with defendants terminated before his case prescribed, negating and necessitating dismissal of his legal malpractice claim." Specifically, the exception stated, in pertinent part:

7.
Defendant, George K. Anding, received the decision of the Medical Review Panel via certified mail on May 14, 2014.

8.
On the same day, Christopher Washington, Defendants' co-counsel in the underlying case, contacted Plaintiff and advised him of the unfavorable panel opinion and of the intention of all attorneys including ANDING/THIBAUT to discontinue legal representation of

3

Plaintiff. Plaintiff acknowledged the unfavorable panel decision, acknowledged the termination of the attorney-client relationship, refused to retrieve his file, and abruptly terminated the conversation.

9.

By certified letter dated May 19, 2014, ANDING/THIBAUT and Mr. Washington again advised Plaintiff of the unfavorable opinion of the Medical Review Panel and the attorneys' declination to further pursue the case.

10.

In the aforementioned letter, ANDING/THIBAUT and Mr. Washington urged Plaintiff to seek other counsel.

11.

In the letter, ANDING/THIBAUT and Mr. Washington further advised that, under the provisions of the Medical Malpractice Act, Plaintiff had 90 days from May 14, 2014, the date of receipt of the panel opinion, or until August 12, 2014, to file a lawsuit should Plaintiff desire to continue pursuit of the medical malpractice claim.

12.

On May 19, 2014, the underlying case was still pending and viable.

13.

Eric Antoine refused to accept the letter of May 19, 2014, and five months later, in October of 2014, contacted ANDING/THIBAUT for them to "resend" the letter he chose to not accept. Accordingly, in October of 2014, ANDING/THIBAUT resent the letter which was thereafter accepted by Plaintiff.

Defendants argue that because the attorney-client relationship was terminated before Mr. Antoine's claim is alleged to have prescribed, he has no right of action in legal malpractice and, thus, his claim must be dismissed.

A hearing on the exception was held on July 16, 2018. At that time, Mr. Antoine testified that he was aware of the fact that Defendants did not want to pursue his case in May 2014. Specifically, Mr. Antoine testified as follows, in pertinent part:

Q. Do you recall becoming aware of the medical review panel decision in May of 2014?

A. Yes, sir.

4

Q. And you first became aware of that from talking with I think you referenced it as the Baton Rouge lawyers [George Anding and Charest Thibaut, III], that being my clients?

A. Yes, sir.

Q. And at the time that my clients -- and that would have been on the phone?

A. Yes, sir.

Q. And this would have been shortly after they received this ruling that I just handed you as Exhibit Number 1; correct?

A. Yes, sir.

. . . .

Q. And at the point in time when you spoke to the Baton Rouge lawyers and were told about the unfavorable ruling, you were also told by them that they did not wish to proceed forward with the case; correct?

A. Yes, sir.

Q. And that they were not going to represent you in the future on the case; correct?

A. I'm sorry.

Q. That they were not going to represent you, that they weren't going forward with the case, they weren't going to continue the representation with you and your brother?

A. Right.

Q. Correct?

A. That's correct.

. . . .

Q. Now, after you had the opportunity to talk to my clients, you then received a phone call from Mr. Washington; correct?

A. Yes.

Q. And Mr. Washington asked you to go to Baton Rouge to meet with my clients and him to talk about this decision. Correct?

A. Yes.

5

Q. And you told Mr. Washington that you were not interested in going to Baton Rouge just to be told that the lawyers were discharging it?

A. No, that's incorrect. I told him I wasn't going to Baton Rouge because they already told me that they didn't want to go forward. And I was upset and I hung up the phone and I was like I don't want to talk about it because y'all not doing anything for me.

Q. By not doing anything for you, you knew that both Mr. Washington and my clients, Mr. Anding and Mr. Thibaut –

A. I knew that the Baton Rouge lawyers no longer wanted to represent us.

Q. At the point that you talked to Mr. Washington?

A. Right.

     . . . .

THE COURT: What did they [Defendants] tell you?

THE WITNESS [Mr. Antoine]: Basically -- basically, it didn't go in your mother's favor, and we had a decision among the group of us and we don't want to take your case further.

THE COURT: So[,] you knew then or however you got the call. Whether Chris called first, Baton Rouge called first, or whatever, it doesn't matter. Within a couple of days[,] we all agree that you knew that the medical review panel was not favorable and you knew that they didn't want to represent you?

THE WITNESS: Yes.

     . . . .

THE COURT: So[,] you knew that they didn't want to represent you?

THE WITNESS: Yeah, they didn't want to go forward with the case.

THE COURT: I understand that. You knew that?

THE WITNESS: Yeah, I'm not contesting I knew that.

THE COURT: Okay.

Following the hearing, the trial court granted Defendants' peremptory exception of no right of action and dismissed, with prejudice, all of Mr. Antoine's claims against them.

Mr. Antoine now appeals this judgment, alleging the following three assignments of error:

> 1. The trial court erred in refusing to admit the trial deposition of Ira Edward Antoine, Jr. taken before a certified court reporter on June 1, 2017, in Houston, Texas, by counsel for the Defendant Lawyers pursuant to notice.
>
> 2. The trial court erroneously treated the affirmative defense of extinguishment as a peremptory exception of no right of action.
>
> 3. The trial court erred in granting defendant[s'] Exception of No Right of Action dismissing the Petition for Damages Arising from Legal Malpractice and Damages Resulting from Breach of Contract.

**STANDARD OF REVIEW:**

In *Badeaux v. Southwest Computer Bureau, Inc.,* 05-0612, 05-0719, p. 6 (La. 3/17/06), 929 So.2d 1211, 1217, the Louisiana Supreme Court noted that "[t]he function of an exception of no right of action is a determination of whether plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the petition[.]" It further stated that a "no right of action serves to question whether the plaintiff in the particular case is a member of the class of persons that has a legal interest in the subject matter of the litigation." *Id.* A peremptory exception of no right of action poses a question of law and is reviewed de novo. *Washington Mut. Bank v. Monticello*, 07-1018 (La.App. 3 Cir. 2/6/08), 976 So.2d 251, *writ denied*, 08-0530 (La. 4/25/08), 978 So.2d 369.

"To prevail on an exception of no right of action, the defendant must show that the plaintiff does not have an interest in the subject matter of the lawsuit or the legal capacity to proceed." *Shorter v. Akins*, 11-1553, p. 2 (La.App. 3 Cir. 4/4/12), 86 So.3d 883, 885, *writ denied*, 12-1363 (La. 10/8/12), 98 So.3d 853. "Evidence

supporting or controverting the existence of no right of action is admissible." *First Union Baptist Church of Alexandria v. Banks*, 533 So.2d 1305, 1309 (La.App. 3 Cir. 1988). Thus, as the exceptors, Defendants had the burden of showing that Mr. Antoine did not have a legal interest in his legal malpractice suit against them.

**DISCUSSION:**

The first issue to address is whether the trial court erred in refusing to admit the June 1, 2017 trial deposition of Ira Edward, Mr. Antoine's brother. At the trial on the peremptory exception, counsel for Mr. Antoine attempted to offer the deposition testimony of Ira Edward, a non-party and lay witness to this proceeding. Counsel for Defendants objected on the grounds of relevancy and noted that Ira Edward had "filed a whole separate lawsuit . . . that was dismissed in Baton Rouge." Counsel also noted that there was no indication that Ira Edward was unavailable for live testimony or that he was subpoenaed for the trial. The trial court sustained the objections. The trial court noted that the deposition had not been attached as an exhibit to the opposition for the exception and that even though the deposition had been taken in 2017, "it [had] not been attached to anything."

Louisiana Code of Civil Procedure Article 1450 allows the deposition testimony of a non-party to be introduced at trial for any purpose, if the court finds:

(a) That the witness is unavailable;

(b) That the witness resides at a distance greater than one hundred miles from the place of trial or hearing or is out of the state, unless it appears that the absence of the witness was procured by the party offering the deposition; or

(c) Upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used.

Although La.Code Civ.P. art. 1450 provides for the admissibility of deposition testimony of a non-party at trial under these limited conditions, "the

decision of whether or not to allow the introduction of a deposition into evidence rests within the sound discretion of a trial judge and will not be reversed on appeal unless it is manifestly erroneous." *Streeter v. Sears, Roebuck & Co.*, 533 So.2d 54, 60 (La.App. 3 Cir. 1988), *writ denied*, 536 So.2d 1255 (La.1989). In the present case, we find that the trial judge was justified in excluding the deposition of Ira Edward as the record is void of any showing that Ira Edward was unavailable for live testimony or that he was subpoenaed and failed to appear. Additionally, there was no finding by the trial court that Ira Edward lived too far from the courthouse or that exceptional circumstances existed to justify admitting his deposition into the record. Therefore, in view of the record, we decline to disturb the trial court's ruling.

The second issue to address is whether the trial court erroneously treated the affirmative defense of extinguishment as a peremptory exception of no right of action. Mr. Antoine argues that Defendants failed to plead the affirmative defense of extinguishment in their answers to his lawsuit and that the trial court erred in treating their no right of action as their affirmative defense of extinguishment. In response, Defendants argue that "[t]he term 'extinguishment' in Article 1005 of the Code of Civil Procedure regarding affirmative defenses largely refers to payment of a debt" and that "[i]t does not refer to a legal relationship between an attorney and client." Defendants argue that Mr. Antoine cannot show that an attorney-client relationship existed at the time that his claim for medical malpractice prescribed. In support of this argument, Defendants cite to Mr. Antoine's testimony wherein he acknowledged that his legal relationship with Defendants ended in May 2014, after receiving the medical review panel opinion. Thus, Defendants argue that this is not an extinguishment of a debt but rather a termination of a legal relationship.

In support of their argument that a peremptory exception of no right of action is the proper procedural vehicle to defeat an action filed by a legal malpractice plaintiff who fails to demonstrate the existence of an attorney-client relationship with a defendant, Defendants cite to this court's decision in *Dinger v. Shea*, 96-448 (La.App. 3 Cir. 12/11/96), 685 So.2d 485. In *Dinger*, this court affirmed a trial court's grant of an exception of no right of action stating that "[a]bsent a showing of attorney-client relationship, no claim for legal malpractice can be maintained." Specifically, this court stated, in pertinent part:

> In order to determine whether the exception was properly granted . . . the above definition [of an exception of no right of action] must be read in conjunction with the requirements for establishing a claim for legal malpractice. In order for a plaintiff to establish a *prima facie* case for recovery in a claim for legal malpractice, he must prove:
>
>> 1) [T]hat he and the defendant entered into an attorney/client relationship,
>>
>> 2) that the attorney was guilty of negligence or professional impropriety in his relationship with the client, and
>>
>> 3) that this conduct caused plaintiff some loss.
>
> *Edward J. Milligan, Jr., Ltd. v. Keele,* 610 So.2d 1087, 1089 (La.App. 3 Cir.1992), *writ denied,* 612 So.2d 98 (La.1993) (citing *Restrepo v. King,* 569 So.2d 92 (La.App. 4 Cir.1990), *writ denied,* 572 So.2d 64 (La.1991); *Ault v. Bradley,* 564 So.2d 374 (La.App. 1 Cir.1990); *writ denied,* 569 So.2d 967 (La.1990)). The existence of an attorney-client relationship is the essential element of a legal malpractice claim; otherwise, the legal remedy of a malpractice claim is not available, and no genuine issue of material fact can be said to exist. *Penalber,* [*v. Blount*] 550 So.2d 577 [(La. 1989).]

*Dinger,* 685 So.2d at 490 (emphasis added).

After a review of the jurisprudence, and the fact that the purpose of an exception of no right of action is to question whether a plaintiff has a legal interest in the subject matter of the litigation, we agree with Defendants that the trial court properly considered their exception of no right of action in this matter. Thus, we find no merit to Mr. Antoine's argument that the trial court erroneously treated the

10

affirmative defense of extinguishment as a peremptory exception of no right of action.

The third issue to address is whether the trial court erred in granting Defendants' exception of no right of action that dismissed the petition for damages arising from legal malpractice and damages resulting from the breach of contract. In Louisiana, "[t]he existence of an attorney-client relationship turns largely on the client's subjective belief that it exists." *La. State Bar Ass'n v. Bosworth,* 481 So.2d 567, 571 (La.1986).

As stated previously, Mr. Antoine testified that he knew in May 2014 that the attorney-client relationship between him and Defendants had ended and that he had three months to decide whether or not to file suit. Nonetheless, Mr. Antoine argues on appeal that Defendants did not properly withdraw from representation under the Louisiana Rules of Professional Conduct and that his Contract of Employment required written notice, as does La.R.S. 37:218, a statute that addresses written contingent fee contracts.

> Louisiana Rules of Professional Conduct Rule 1.16(d) provides:
>
> Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. Upon written request by the client, the lawyer shall promptly release to the client or the client's new lawyer the entire file relating to the matter. The lawyer may retain a copy of the file but shall not condition release over issues relating to the expense of copying the file or for any other reason. The responsibility for the cost of copying shall be determined in an appropriate proceeding.

Mr. Christopher Washington testified at trial that he spoke to Mr. Antoine on the day of receiving the unfavorable opinion by the medical review panel. Mr. Washington testified, as follows:

A. So I called Eric, he answered, and I said, "Eric, I just spoke to Mr. Anding and Mr. Thibaut, and the guys would like for you to come to Baton Rouge so we can talk to you about the panel decision and let you know what your options are going forward." And at that point he kind of cut me off and he [said], "Are they going to take the case?" I said, Well, honestly, no. With what we have, we're taking the position that we don't want to go forward, but we prefer to get you in and let you know why and what your options are." And he pretty much cut me off and said, "I'm not going to come to Baton Rouge for you guys to tell me that you're not going to take the case any farther, so you can just send me my file and I'll consult with another lawyer if I decide to do so."

Q. And did you - -

A. And he just abruptly hung up. He just hung up in my face at that point.

Q. And at that point, did you relay that back to Mr. Anding and Mr. Thibaut?

A. Well, it actually worked out for myself [sic], Mr. Anding, and Mr. Thibaut because there's a record of it. After Eric hung up on me, I actually placed a call to each one of them and I wasn't able to get the, on the phone, so I immediately, the same day, May 14th, 2014, I typed an email detailing the contents of the conversation that I had just had with Erick, and after receiving my email I believe I got a call from one or both of them.

Q. Okay. And ultimately, it was decided that a letter was going to be sent?

A. Right. At that point in time, in fact, in my email towards the bottom of the email, I say I think we need to go ahead and, which is standard, send him a copy of his file and a letter confirming what I just said on the phone with him. And we agreed that a letter would be sent by certified mail, and Mr. Anding volunteered to be the person who would prepare the letter and make sure it went out.

Q. At any point in the conversation before Mr. Antoine, Mr. Eric Antoine, hung up on you, did he tell you that he wasn't checking or accepting mail?

A. No. In fact, he requested that we send the file to him by mail before he hung up. His words were, "Send me my file and I'll consult another lawyer if I decide to."

Mr. Dane S. Ciolino, Professor of Legal Ethics at Loyola University School of Law, also testified at trial as an expert in the standard of care and conduct

12

governing Louisiana lawyers. After considering the facts and all pleadings in this case, he testified:

> Q. Could you [Professor Ciolino] tell us what is involved in that decision and what your opinion is.
>
> A. Right. Well, you had asked me to look at all the materials that you provided and to render an opinion as to whether they complied with the standards of care and conduct in withdrawing from representing Mr. Antoine. My opinion was that they did comply with the applicable standards of care. The standard of care is pretty straightforward. It's one of reasonable care. They have got to reasonably communicate with their client about the representation and their termination of the representation and then they have to exercise reasonable care in protecting his interests upon withdrawal. And, again, that is the basic standard set forth in both Rule 1.4, which is the general rule on communication, lawyers have to keep their clients reasonably informed about the progress of their matters, et cetera, and 1.16[,] which is the rule that governs termination of the lawyer-client relationship.
>
> . . . .
>
> Q. And based upon everything that you've reviewed, the pertinent standards that you've referenced and the testimony that you've heard here today, what is your opinion as to whether or not Mr. Anding, Mr. Thibaut, and Mr. Washington properly disengaged from Mr. Eric Antoine's case?
>
> A. My opinion is that they complied with the applicable standards of care and conduct in doing that withdrawal. They also withdrew consistent with their engagement agreement which required written notice. So not only – I mean, in my view -- and let me just back up. I didn't hear anything today that was different from what was in all of the previous materials that were provided to me. So[,] I don't think anything that I heard today affected any of the opinions that I've already formulated in the case. But it's my firm opinion that they satisfied the standard of care and standard of conduct in withdrawing. They satisfied the provisions, the contractual provisions, and they satisfied any obligations they had to the Court, which in my view were none since they were never counsel of record in the ancillary proceeding that was filed that tended to the medical review panel proceeding.
>
> Q. Under Louisiana law, is there a requirement for there to be a written letter sent from the lawyer to the client for disengagement?
>
> A. Not under the typical general standard of care that governs withdrawal. But in this case, there was a notice, a written notice, requirement in the contract of the engagement agreement.

Q. And your opinion is both ways; both the standard of care and their contract, Mr. Anding and Mr. Thibaut and Mr. Washington, complied with what is required?

A. Yes.

When asked whether Defendants should have drafted a lawsuit for Mr. Antoine to file on his own, Mr. Ciolino testified that "the standard of care certainly doesn't require a lawyer to draft up a petition if the lawyer is not going to go forward with a case or is going to decline representation."  In fact, Mr. Ciolino found that drafting up a petition would be a "bad practice because once that lawyer drafts up a pleading and gives it to a pro se litigant to file, that lawyer is going to be responsible for exercising reasonable care in preparing that document."

Upon review of the record, and the fact that Defendants were never counsel of record in the ancillary proceeding, we find that Defendants complied with the standard of care required of Louisiana attorneys when they notified Mr. Antoine, by telephone and by certified mail, of their decision to discontinue their representation of him upon receiving the unfavorable medical review opinion in May 2014.  Because Mr. Antoine's suit remained viable after the attorney-client relationship ended in May 2014, we find that there was no right of action in legal malpractice in this matter.

In conclusion, we affirm the trial court judgment, signed on July 31, 2018, that granted Defendants' exception of no right of action and dismissed Mr. Antoine's claims against them with prejudice.  All costs of this appeal are assessed against Mr. Antoine.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3

14